4 Cal.App.4th 799 (1992)
5 Cal. Rptr.2d 752
In re TWIGHLA T. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S SERVICES, Plaintiff and Respondent,
v.
SANDRA N., Defendant and Appellant.
SANDRA N., Petitioner,
v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S SERVICES et al., Real Parties in Interest.
Docket Nos. B060058, B062873.
Court of Appeals of California, Second District, Division Five.
March 16, 1992.
*801 COUNSEL
Jill M. Bojarski, under appointment by the Court of Appeal, for Defendant and Appellant and for Petitioner.
De Witt W. Clinton, County Counsel, Joe Ben Hudgens, Deputy County Counsel, and Jill Regal for Plaintiff and Respondent and for Real Parties in Interest.
No appearance for Respondent Superior Court.
OPINION
ASHBY, J.
Appellant Sandra N., the mother of the minors Twighla T. and Arthur T., appeals from the juvenile court's April 22, 1991 order which granted legal guardianship over the minors to a paternal aunt, Geraldine M. (Welf. & Inst. Code, § 366.3.) On November 15, 1991, appellant also filed a petition for writ of mandate by which she seeks to review the prior order of July 19, 1990, made at a permanency planning hearing, authorizing the department of children's services to initiate the guardianship proceedings. (Welf. & Inst. Code, § 366.25, subd. (d)(2).) We ordered that the writ petition be considered concurrently with the appeal.
We affirm the granting of the guardianship. We deny the writ petition as untimely filed.

*802 BACKGROUND
In 1988 the minors were declared dependent children of the juvenile court pursuant to Welfare and Institutions Code section 300 and their custody was removed from appellant. Appellant moved to Las Vegas; Arthur's father was incarcerated in state prison; and Twighla's father was not involved in seeking family reunification. The minors were suitably placed with Geraldine M., who is the sister of Arthur's father.

PETITION FOR WRIT OF MANDATE
Dependency hearings proceeded in due course, and on July 19, 1990, the juvenile court conducted a permanency planning hearing pursuant to Welfare and Institutions Code section 366.25. The court found that return of the minors to appellant's custody would create a substantial risk of detriment to the physical and emotional well-being of the minors (Welf. & Inst. Code, §§ 366.2, subd. (e), 366.25, subd. (c)), that there was no substantial probability the minors would be returned to appellant's custody within six months (Welf. & Inst. Code, § 366.25, subds. (c), (d)) and that it was not likely the minors could or would be adopted. (Welf. & Inst. Code, § 366.25, subd. (d)(2).) The court therefore ordered the department of children's services to initiate or facilitate a guardianship in order to provide a stable and permanent home for the minors. (Welf. & Inst. Code, § 366.25, subds. (a), (d)(2).)
In a petition for writ of mandate, filed November 15, 1991, appellant attempts to review that order.[1] (1a) We conclude the petition should be denied on the ground it was not timely filed.
Welfare and Institutions Code section 366.25, subdivision (j) provides, "An order by the court ... that authorizes the initiation of guardianship proceedings is not an appealable order but may be the subject of review by extraordinary writ."
(2) The reason an order which initiates guardianship proceedings is reviewable only by extraordinary writ is the necessity for timely and expeditious review. If the permanency planning order is erroneous, it is essential that such determination be made before the guardianship proceeding authorized by the order is conducted. (See In re Kristin W. (1990) 222 Cal. App.3d 234, 249 [271 Cal. Rptr. 629]; In re Taya C. (1991) 2 Cal. App.4th 1, 7-8 & fn. *803 8 [2 Cal. Rptr.2d 810]; In re Matthew C. (1992) 3 Cal. App.4th 249, 261 [4 Cal. Rptr.2d 303]; In re Amanda B. (1992) 3 Cal. App.4th 935, 940 [4 Cal. Rptr.2d 922]]; Cynthia D. v. Superior Court (1992) 3 Cal. App.4th 913, 918-922 [4 Cal. Rptr.2d 909].)
(1b) Here the petition for extraordinary relief was filed 16 months after the permanency planning order which it seeks to challenge and 7 months after the completion of the guardianship proceedings which were initiated on the authority of that order. This is not a reasonable time for seeking extraordinary relief. (In re Taya C., supra, 2 Cal. App.4th at pp. 7-8; In re Amanda B., supra, 3 Cal. App.4th at pp. 941-942; Cynthia D. v. Superior Court, supra, 3 Cal. App.4th at p. 922.) Although there is no fixed time limit for an appellate court to consider a petition for writ of mandate, we conclude in the circumstances of this case the petition for extraordinary relief should be denied for unreasonable delay in its filing. (In re Matthew C., supra, 3 Cal. App.4th at p. 264; In re Amanda B., supra, 3 Cal. App.4th at pp. 941-942; cf. In re Amber U. (1992) 3 Cal. App.4th 871, 879 [4 Cal. Rptr.2d 762].)
Appellant contends the lateness of the petition should be excused on the ground appellant timely attempted to appeal the July 19, 1990 permanency planning order. This contention is not persuasive. In that appeal (B053371, of which we take judicial notice) appellant's then-appointed counsel submitted a brief stating that he had reviewed the record and could find no arguable issues; he requested the Court of Appeal to independently review the entire record pursuant to People v. Wende (1979) 25 Cal.3d 436 [158 Cal. Rptr. 839, 600 P.2d 1071] and In re Brian B. (1983) 141 Cal. App.3d 397 [190 Cal. Rptr. 153]. Appellant was notified and invited to submit any contentions or issues she wished the Court of Appeal to consider. After receiving numerous documents from appellant the Court of Appeal concluded in an unpublished decision filed May 31, 1991, that "Appellant asks, in essence, that this court reweigh the evidence and substitute its judgment for that of the dependency court. That is not the function of an appellate court. [¶] We have examined the entire record and are satisfied that appellant's attorney has fully complied with his responsibilities and that no arguable issues exist." The prior appeal could have been treated as a writ of mandate if appellant had any grounds at that time to challenge the permanency planning order. (E.g., In re Rebecca H. (1991) 227 Cal. App.3d 825, 837 [278 Cal. Rptr. 185].) But in appellant's case the record shows that despite review by appellant's appointed counsel and independent review by the Court of Appeal, assisted by input from appellant, there were no arguable issues. These circumstances do not excuse or justify appellant's present untimely attempt to review the prior order again, by way of a writ petition considered in conjunction with the appeal of the subsequent guardianship hearing. (In re Amanda B., supra, 3 Cal. App.4th at p. 941.)

*804 APPEAL OF GUARDIANSHIP
At the hearing on the petition for guardianship, the issues were whether guardianship, as distinguished from long-term foster care, should be approved, and whether the juvenile court should retain its dependency jurisdiction. (Welf. & Inst. Code, §§ 366.25, subd. (d)(2), 366.3, subd. (a).)
By the time of the guardianship hearing in April 1991, Mrs. M. had consistently met the needs of the minors, providing a stable nurturing home environment; she integrated the minors into her family, which consisted of Mrs. M.'s mother and 16-year-old son. Mrs. M., a schoolteacher, gave the children excellent physical care. The minor Twighla was slightly developmentally delayed, but was receiving speech therapy and special education at school. Although both children, then ages 10 and 8, expressed a desire to live with appellant, they also wanted to live with Mrs. M. if they could not live with appellant.
Return of custody to appellant was not in the best interests of the minors. The social worker in Las Vegas reported that appellant "continues to exhibit paranoia, exaggerated suspicio[n]s, poor judgement in decision-making, persecutory delusions, and massive denial disorder." The ongoing social worker in Los Angeles also opined, "the minors should not go back to their mother. With her type of illness, she is really unable to have good judgement."
Appellant maintained contact with the children by telephone, letter writing, and visits when appellant could get away from her Las Vegas employment as a security guard and her fashion design business. Although appellant claimed Mrs. M. was hostile to appellant's visitation, there was strong evidence to the contrary.[2] Mrs. M. testified both as to her cooperation during appellant's previous phone calls and visits, and Mrs. M.'s desire, if guardianship was granted, to have reasonable visitation by appellant as often as possible. The investigating children's services worker, Mark Pitts, opined that if guardianship was granted and juvenile court dependency jurisdiction terminated, appellant's visitation rights would not be inhibited, because Mrs. M. was in agreement with appellant's visitation rights and had good judgment on that issue.
Mrs. M. was committed to providing a permanent home for the children to adulthood. She applied for the guardianship and was willing to assume its responsibilities. The children's services worker report recommended the petition be granted. Mrs. M. testified she also had no objection to providing *805 long-term foster care under continuing dependency jurisdiction of the juvenile court and monitoring by social workers. However, she did not need continuing assistance from the department of children's services.
The trial court granted the guardianship petition, finding it to be in the best interest of the children. The court commented that in securing for the children a permanent and stable environment it was important for them to know they would be living with Mrs. M. permanently, rather than being confused, during every visitation, by appellant's statements that they could move back with appellant.
(3) Appellant contends the trial court abused its discretion in granting guardianship and terminating the juvenile court's dependency jurisdiction, instead of ordering long-term foster care with continuing juvenile court dependency jurisdiction, which would have involved periodic reports, monitoring and assistance by social workers.[3] Appellant contends continuing dependency jurisdiction and long-term foster care were necessary in order (1) to meet the minor Twighla's special educational needs and (2) to assure appellant's visitation rights would not be frustrated by the guardian. We find no merit to these contentions.
The record supports the trial court's implied conclusion that Twighla's special educational needs were being met in school, where she was in a special education class and was receiving speech therapy. Appellant attributes to the trial court an attitude that (in appellant's words), "there was no point in continuing jurisdiction because Twighla wasn't getting the services she needed through DCS anyway." We do not agree with this characterization of the record. What the trial court found, in accordance with Mrs. M.'s testimony, was that Mrs. M. did not need additional DCS assistance to care for the children. The court said, "She's demonstrated through her testimony, *806 through the children themselves, through the matters in the report, that she is doing a more than adequate job in caring for the children."
The trial court also carefully considered, and was within its discretion in rejecting, appellant's contention that continuing dependency jurisdiction was needed to assure appellant's visitation rights. As discussed ante page 804, substantial evidence strongly supported the conclusion that visitation was not likely to be a serious problem in light of the guardian's cooperative attitude toward visitation. If a problem nevertheless were to develop in the future, appellant would have access to the court through the court's jurisdiction over the guardianship itself. (Welf. & Inst. Code §§ 366.3, subd. (a), 366.4.) The fact that appellant might have tactical legal advantages if the juvenile court's dependency jurisdiction were retained was not sufficient to overcome the trial court's conclusion that continuing dependency jurisdiction was not necessary under the circumstances.
The order granting guardianship is affirmed. The petition for writ of mandate is denied.
Turner, P.J., and Boren, J., concurred.
Appellant's petition for review by the Supreme Court was denied May 28, 1992.
NOTES
[1] Appellant contends in the writ petition that (1) the evidence at the permanency planning hearing was insufficient to show that return of the children to appellant's custody in Nevada would create a substantial risk of detriment to the children and (2) the department of children's services had a duty to contract with a private agency in Nevada to provide reunification services.
[2] Resolution of these conflicts in the evidence was of course exclusively the function of the trial court. (In re Angelia P. (1981) 28 Cal.3d 908, 924-925 [171 Cal. Rptr. 637, 623 P.2d 198].)
[3] Welfare and Institutions Code section 366.25, subdivision (d), which requires the juvenile court to develop a permanent plan for the minor, provides in pertinent part: "(2) If the court finds that it is not likely that the minor can or will be adopted... the court shall order the appropriate county department to initiate or facilitate the placement of the minor in a home environment that can be reasonably expected to be stable and permanent. This may be accomplished by initiating legal guardianship proceedings or long-term foster care. Legal guardianship shall be considered before long-term foster care, if it is in the best interests of the child and if a suitable guardian can be found." (Italics added.)

Welfare and Institutions Code section 366.3, subdivision (a) provides in pertinent part: "If a juvenile court orders a permanent plan of ... legal guardianship pursuant to Section 366.25 ..., the court shall retain jurisdiction over the minor until ... the legal guardianship is established.... The court may continue jurisdiction over the minor as a dependent minor of the juvenile court following the establishment of a legal guardianship or may terminate its dependency jurisdiction and retain jurisdiction over the minor as a ward of the guardianship established pursuant to Section 366.25 ... and as authorized by Section 366.4." (Italics added.)