21 Cal.Rptr.3d 711 (2004)
124 Cal.App.4th 1013
In re K.D., a Person Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Tanya H., Defendant and Appellant.
No. D044381.
Court of Appeal, Fourth District, Division One.
November 10, 2004.
Sharon S. Rollo, under appointment by the Court if Appeal, Chatsworth, for Defendant and Appellant.
John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.
Rich Pfeiffer, under appointment by the Court of Appeal, Orange, for the Minor.
O'ROURKE, J.
Tanya H. (the mother) appeals juvenile court orders establishing a permanent *712 plan of guardianship for her son, K.D., naming a guardian and terminating the court's dependency jurisdiction. She argues the court abused its discretion in not selecting a guardian whose residence is in California or, in the alternative, not maintaining jurisdiction in order to oversee visitation. We affirm the orders establishing the guardianship and naming K.D.'s foster father as his guardian. We reverse the order terminating dependency jurisdiction.

FACTUAL AND PROCEDURAL BACKGROUND
On August 29, 2002, the San Diego County Health and Human Services Agency (the Agency) petitioned on behalf of four-month-old K.D. under Welfare and Institutions Code section 300, subdivision (b),[1] alleging he had a medical disorder requiring care and treatment that the mother was unable to provide because of her methamphetamine use. The mother admitted she was addicted to methamphetamine. She appeared to have difficulty answering the social worker's questions. She had been a client of the Regional Center in the past and had attended special education classes in school.
The court detained K.D. and appointed counsel. At the jurisdictional/dispositional hearing on September 18, 2002, the mother submitted to the allegations. The court sustained the petition, declared K.D. a dependent child and placed him with his maternal grandmother. It ordered the mother to comply with her case plan and ordered supervised visits.
The psychologist who conducted a psychological evaluation of the mother said she has an adjustment disorder with mild anxiety and depressed mood, a personality disorder, methamphetamine dependence and mild mental retardation. He expressed doubt that she could become stable enough to be a safe parent for K.D.
In December 2002, the Agency petitioned under section 387, requesting a change of placement because the grandmother did not seek medical care for K.D. when he was ill, he developed pneumonia and required emergency hospitalization. A public health nurse described the grandmother as developmentally delayed. The court sustained the petition and placed K.D. in foster care with a registered nurse. The social worker reported that in the foster father's care, K.D. was receiving regular medical care and seemed to "come to life." The mother was participating in drug treatment, had supervised visits and began individual therapy.
At the six-month review hearing on April 7, 2003, the court continued services and gave the social worker discretion to begin unsupervised visits, but later denied the mother's request for overnight visits because of concerns that she and the grandmother could not recognize situations that pose a danger to K.D.
In the 12-month report, the social worker reported K.D. continued to thrive in the foster father's home. The mother had been progressing well with services, but lacked the ability to care for K.D. safely. The court appointed special advocate reported K.D. has a loving relationship with the foster father, who is able to administer much of his medical treatment at home. The special advocate described K.D.'s visits with the mother as very affectionate playtimes. She recommended visits remain supervised and K.D. stay in his current placement.
At the 12-month hearing on November 3, 2003, the court found return to parental custody would be detrimental, terminated services and set a section 366.26 hearing.
*713 In the adoption assessment report, dated March 2, 2004, the social worker reported the foster father was committed to adopting K.D. and had an approved home study. The social worker recommended adoption and said K.D. and the mother's relationship was that of playmates. The special advocate opined although K.D. is affectionate with the mother, he has a stronger attachment to the foster father. She also recommended adoption.
A bonding study was performed in March 2004. The psychologist who completed the study observed K.D. at first showed little reaction to being put down by the mother and appeared more interested in playing with toys than with separating from her. He reported that as the study went on, however, K.D.'s behavior changed and he showed a stronger bond with the mother than with the foster father, refusing to go with the foster father and insisting on being with the mother. The evaluator opined K.D. would be hurt if he no longer had contact with the mother.
At the section 366.26 hearing on April 19, 2004, the social worker testified she had observed weekly visits between K.D. and the mother for four months. She said K.D. enjoyed playing with the mother, but went to the grandmother for comfort and separated easily at the end of visits. She opined it would be in K.D.'s best interests to be adopted by the foster father, but he would suffer grief and loss if he did not see the mother again. The psychologist who performed the bonding study said K.D. would be hurt if he had no contact with the mother, but agreed he needed to be with a caretaker who could meet his daily needs. The parties stipulated that were the mother to testify she would say she loves K.D. very much and opposes adoption.
The court found the exception to termination of parental rights of section 366.26, subdivision (c)(1)(A) applied and continued the matter for the preparation of letters of guardianship. Subsequently, the court learned the foster father planned to move to Ohio, and the social worker reported the Agency had located a family in San Diego County willing to become K.D.'s guardians.
At a hearing on the guardianship on May 19, 2004, the social worker reported the foster father had received a job offer in Ohio and placed a down payment on a house there. She recommended K.D. have contact with the mother and the grandmother at least every three months.
The foster father testified he first talked with the social worker in January 2004 about possibly taking a job in Ohio and in March told her he was going there to look into the job offer. He denied seeking new employment, but said a recruiting firm contacted him about the job in Ohio. He said he intended to permit ongoing parental contact of some type.
The court found it would be detrimental to remove K.D. from the foster father's care, ordered supervised visitation to occur at least twice each year and at least once in the next six months, and directed the foster father to bring K.D. to California for visits. The court appointed the foster father as K.D.'s guardian, issued letters of guardianship and terminated jurisdiction.

DISCUSSION
The mother contends the court abused its discretion in not selecting a guardian who resides in California or, in the alternative, not maintaining dependency jurisdiction in order to oversee visitation.
A reviewing court will not disturb a court's ruling in a dependency proceeding "`"unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]."'" (In re Stephanie *714 M. (1994) 7 Cal.4th 295, 318, 27 Cal.Rptr.2d 595, 867 P.2d 706, quoting In re Geoffrey G. (1979) 98 Cal.App.3d 412, 421, 159 Cal.Rptr. 460.)
The court did not clearly abuse its discretion in appointing the foster father to be K.D.'s guardian. The foster father had been caring for K.D. since December 2002 and their relationship was described by the social worker and the special advocate as very loving and affectionate. K.D. had respiratory problems because of his narrow and unusually shaped trachea and without proper treatment could develop pneumonia, respiratory distress, inflammation of the esophagus and bleeding. The foster father was able to provide medical care for problems related to this condition, including treatments that ordinarily would be available only in a hospital. K.D. also had a wandering eye, requiring him to wear glasses and a patch, and he had bilateral middle ear effusions. The other potential guardian identified by the social worker had a relationship with K.D. and lived in San Diego, so if K.D. were living with this caretaker it would be easier to arrange visits with the mother. It was unknown, however, whether this potential caretaker was able to provide for K.D.'s medical needs. Because of the strong bond between K.D. and the foster father and the foster father's specialized ability and history of providing for K.D.'s medical needs, we cannot say the court clearly abused its discretion in appointing him as K.D.'s guardian.
The mother and K.D.'s appellate counsel argue the court should have maintained jurisdiction so it could oversee visitation. This argument was not raised in the juvenile court and is therefore waived. (In re Crystal J. (1993) 12 Cal.App.4th. 407, 411-412, 15 Cal.Rptr.2d 613; In re Dakota S. (2000) 85 Cal.App.4th 494, 501-502, 102 Cal.Rptr.2d 196.) Here, however, because the court's order terminating its dependency jurisdiction is fatally inconsistent with its finding that it was in K.D.'s best interest to maintain the parental bond and with its order that visits occur at least twice each year, we exercise our discretion to consider the issue. (See Lopez v. McMahon (1988) 205 Cal.App.3d 1510, 1520, 253 Cal.Rptr. 321.)
When a guardianship is established and a guardian appointed the juvenile court may continue jurisdiction over the child as a dependent child of the court or, alternatively, it may terminate dependency jurisdiction. (§ 366.3, subd. (a); Cal. Rules of Court, rule 1465(d)(3).) If dependency jurisdiction is terminated the court retains jurisdiction over the child as a ward of the court as authorized by section 366.4 (§ 366.3, subd. (a).), but it no longer holds ongoing review hearings.
By finding the exception to adoption applied and ordering regular visitation, the court had determined that preserving K.D.'s relationship with the mother was in his best interest. It then was obligated to maintain dependency jurisdiction and hold periodic review hearings to monitor whether regular visitation was occurring.
In In re Twighla T. (1992) 4 Cal.App.4th 799, 801, 5 Cal.Rptr.2d 752, the juvenile court granted guardianship over two children to a paternal aunt and terminated its dependency jurisdiction. The children's mother argued the court should have retained dependency jurisdiction, claiming the aunt was hostile to her visitation with the children. There also, however, was evidence that the aunt cooperated in arranging visits. (Id. at p. 804, 5 Cal. Rptr.2d 752.) The appellate court affirmed the juvenile court's orders, ruling substantial evidence supported a finding there would not be serious problems with visitation. It noted if problems were to develop, the mother would have access to *715 the court through the court's jurisdiction over the guardianship itself. (Id. at p. 806, 5 Cal.Rptr.2d 752.)
Here, during the hearing on the guardianship, the foster father's attorney suggested that communications such as letters, telephone calls and video messages would be appropriate visitation for the time being. But the court determined such contact was insufficient and instead ordered face-to-face visitation to occur at least twice each year. It then terminated jurisdiction and advised the parents that if visitation did not take place they could file a section 388 petition. The court's advice regarding bringing a section 388 petition was inadequate, especially given the mother's limitations, to ensure that regular visits continue so the bond the psychologist described and the court deemed beneficial to K.B. could be maintained. Because the court found it was in K.D.'s best interest to preserve his bond with the mother, it had an obligation to retain dependency jurisdiction and hold periodic review hearings to oversee visitation. The mother has shown an abuse of the court's discretion in terminating dependency jurisdiction.

DISPOSITION
The order terminating dependency jurisdiction is reversed and the court is directed to hold periodic review hearings to ensure ongoing visitation is occurring. All other orders are affirmed.
WE CONCUR: HUFFMAN, Acting P.J., and IRION, J.
NOTES
[1] All statutory references are to the Welfare and Institutions Code.