[No. A127208. First Dist., Div. Four. Dec. 8, 2010.]

In re GRACE C. et al., Persons Coming Under the Juvenile Court Law.
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
S.C., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.C.

**COUNSEL**

Jessica Morgan Ronco, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard E. Winnie, County Counsel, and Grace F. Tam, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**SEPULVEDA, J.**—Appellant S.C. (mother) appeals from orders dismissing dependency jurisdiction as to her children Grace C. and Angelo C. after

relatives were appointed as legal guardians for the minors. Mother claims that (1) the juvenile court abused its discretion by dismissing dependency, (2) the court improperly delegated discretion to the minors' legal guardians and therapist over visitation, and (3) respondent Alameda County Social Services Agency (Agency) failed to comply with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA). We affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

The Agency filed a juvenile dependency petition pursuant to Welfare and Institutions Code section 300, subdivisions (b)[1] (failure to protect) and (g) (no provision for support) on December 15, 2004, when Grace was less than a week old. The petition (case No. OJ04000155) alleged that mother and Grace tested positive for cocaine at the time of Grace's birth; that mother was on probation and had been previously incarcerated for drug sales; that mother had an "unstable, complicated home situation" that included a history of domestic violence; and that mother was unable to identify Grace's father.[2] Grace was adjudged a dependent child, and she was placed in the home of her maternal great-grandmother when she was five months old.

Mother gave birth to Angelo in March 2006. He was not immediately made a dependent of the juvenile court. Over the next year and a half, Grace was repeatedly continued as a dependent child following review hearings. Mother was permitted an extended visit with Grace, and Grace was eventually placed with mother for about a year; mother received family maintenance services during that time.

The Agency received a general neglect referral as to both Grace and Angelo in July 2007, and an investigation revealed that mother might not have stable housing. A supplemental petition (§ 387) was filed on August 28, 2007, alleging that Grace had been subject to neglect and that she had been exposed to domestic violence between mother and mother's boyfriend. Grace was again placed with her great-grandmother.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Mother later told the Agency that she believed Grace's father was A.S.; however, he denied paternity. As of February 2007, his whereabouts were unknown, and he apparently never participated in the proceedings.

At a hearing on August 29, 2007, Grace was ordered retained, and the Agency was authorized to detain Angelo.[3] The next day, the Agency filed a petition as to Angelo (case No. OJ07007882) pursuant to section 300, subdivisions (b) (failure to protect) and (j) (abuse of sibling), alleging that mother had placed both minors in dangerous situations while they were in her care. Angelo was ordered detained, and was placed with Grace in the great-grandmother's home.

Following a hearing on September 8, 2008, the parties reached a settlement regarding disposition. Pursuant to that settlement, the juvenile court sustained the section 387 petition (as amended at the hearing) as to Grace. The court adjudged Angelo a dependent child pursuant to section 300, subdivisions (b) and (j). Mother and Angelo's father waived their rights to family maintenance and family reunification services. They also agreed to the appointment of the maternal great-grandmother and maternal great-aunt as legal guardians for Grace and Angelo, and the juvenile court ordered the appointment after finding the appointment was in the best interest of the minors and after mother and Angelo's father signed letters of guardianship.

In an addendum report dated May 8, 2009, the Agency recommended that the juvenile court dismiss dependency as to the minors, and the juvenile court set the matter for a contested hearing after a mediation among the parties failed to result in an agreement regarding visitation.

A contested postpermanency review hearing was held over two days, on September 4 and October 30, 2009. The juvenile court received into evidence five Agency social worker reports. Those reports revealed that mother had "made significant progress in improving her personal circumstances," and that she was recovering from substance abuse and pursuing "healthy personal goals." She was "generally . . . in compliance" with the visitation plan, which called for three visits each week, to be supervised by the legal guardians. Maintaining the visitation schedule sometimes was "challenging for all the parties involved," because various personal and business conflicts (including mother's school and work schedules) had caused the parties to miss various visits. The visits took place at a fast food restaurant in Oakland, a location that was often "crowded and chaotic." Mother found the legal guardians "not to be very flexible with the visitation arrangements because they ha[d] not agreed to many of the venues and activities suggested" by her. The social worker reported that the legal guardians had offered "some flexibility" by including mother and Angelo's father in holiday plans, allowing mother to host Angelo's birthday party at her home, and agreeing to have visits at a

---

[3] The juvenile court found at the hearing that Randy H. was the presumed father of Angelo. Angelo's father participated in the dependency proceedings and opposed dismissal; however, he did not appeal.

local park of mother's choice. The social worker did not find it necessary or desirable to dictate specific visitation arrangements, because the legal guardians were providing a safe and stable home for the minors, and they were making good faith efforts to follow court orders. The minors and their legal guardians received weekly psychotherapy.

Mother testified at the September 4 hearing that she was able to see her children once during the week for two-hour visits, and on one Saturday each month. She stated that she sometimes had difficulty setting up visits with her aunt and grandmother, and that they declined her request to arrange longer and more frequent visits with the minors. Mother also described times when she argued with the legal guardians about when and where to meet for visits, and she testified that her Saturday visits with the minors did not last for four hours, as she had expected they would. Mother was concerned that if the juvenile court dismissed dependency jurisdiction, she might see her children less frequently. As set forth more fully below (see, *post*, pt. II.B.), the court issued a detailed visitation order following the September 4, 2009 hearing. The order explained how the parties were to contact one another to arrange visits and specified that mother would have one dinner visit and one therapeutic visit with the minors each week.

Between the hearing on September 4 and the hearing on October 30, mother started therapeutic visits on Wednesdays with her children, as contemplated by the juvenile court's September 4 visitation order. Mother testified, "I have fun during the visits and I'm able to learn skills that help me interact with my kids and I really look forward to spending that time in a safe environment with my children." She also testified that she visited with the minors each Friday for two hours and that the visits had "been going well for the most part." Mother was still concerned that she might not be able to see her children if dependency was dismissed, because the "only way" she was able to visit with them was through "pressure from the Court."

The child welfare worker assigned to the case testified that if dependency was dismissed, therapeutic visits could continue because the cost of visits was covered by the minors' Medi-Cal.

At the conclusion of the October 30, 2009 hearing, the juvenile court dismissed dependency jurisdiction as to the two minors. The court also maintained the visitation order that it had issued on September 4 and made it the permanent order of the court in both of the minors' cases. Mother timely appealed.

## II.

### DISCUSSION

### A.  *No Abuse of Discretion to Dismiss Dependency.*

Mother argues that the juvenile court abused its discretion when it terminated its dependency jurisdiction. Section 366.3, subdivision (a) provides that if "a relative of the child is appointed the legal guardian of the child and the child has been placed with the relative for at least 12 months, the court *shall*, except . . . upon a finding of *exceptional circumstances*, terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the guardianship, as authorized by Section 366.4." (Italics added.) Mother contends that exceptional circumstances were present here because of the legal guardians' alleged "failure" to comply with visitation orders throughout the proceedings and because of "the complex visitation arrangement and adversarial relationship between [mother] and the guardians on the issue of visitation."

We disagree that the evidence established that the legal guardians failed to comply with visitation orders. At the time of the postpermanency review hearing, the legal guardians were providing mother with regular visitation as ordered by the court. It is true, as set forth in the testimony highlighted by mother on appeal, that the parties often had difficulty agreeing on the details of visits, partly because of the schedules of the legal guardians *and* mother, and partly because the parties apparently had difficulty communicating with one another. The juvenile court attributed these problems in part to mother's "confusion," and appeared skeptical that the legal guardians were entirely to blame as mother claimed, stating, "I just don't understand why it's so difficult, quite frankly, to have a discussion and set up a specific date and time and place."

To address the parties' communication and scheduling issues, the juvenile court issued a detailed visitation order following the hearing on September 4, 2009. Mother thanked the court for the "clarification regarding the visitation schedule," stating that it would be helpful. Indeed, when the postpermanency review hearing continued on October 30, mother testified that the visits held pursuant to the court's September 4 order had "been going well for the most part." The juvenile court likewise observed that the September 4 visitation order "appear[ed] to be working well." The court observed that "I think the family has shown that with such a carefully crafted and explicit visitation order in place, the visits do happen consistently." Although mother was still concerned that she would not get to visit her children absent continued dependency jurisdiction over the case, the juvenile court disagreed, stating

that "[t]he legal guardians do appear to be supportive of the mother's relationship with the children. So I think the argument that dismissal would somehow end contact between the mother and her children or reduce that contact is a non-starter."

Because the juvenile court's conclusion that the legal guardians supported continued visitation was supported by substantial evidence, we reject mother's argument that jurisdiction should have been maintained to oversee visitation. (*In re Twighla T.* (1992) 4 Cal.App.4th 799, 806 [5 Cal.Rptr.2d 752] [no abuse of discretion to dismiss dependency jurisdiction pursuant to § 366.3, subd. (a) where there was substantial evidence that legal guardian cooperated in arranging visits].)[4] The cases upon which mother relies in arguing to the contrary are inapposite. *In re K.D.* (2004) 124 Cal.App.4th 1013, 1016, 1019 [21 Cal.Rptr.3d 711], did not involve appointment of a relative of the minor as the guardian, a situation where the juvenile court is *required* to dismiss dependency absent exceptional circumstances. (§ 366.3, subd. (a).) In *In re Joshua S.* (2003) 106 Cal.App.4th 1341 [131 Cal.Rptr.2d 656], disapproved on another ground in *In re Joshua S.* (2007) 41 Cal.4th 261, 274, footnote 7 [59 Cal.Rptr.3d 460, 159 P.3d 49], unlike here, it was undisputed that the legal guardians were unable to meet the children's needs without financial assistance, which might not be available if the court dismissed dependency. (*In re Joshua S., supra*, 106 Cal.App.4th at pp. 1353, 1356.)[5]

The question remains whether the juvenile court's visitation order impermissibly delegated discretion over visitation to the minors' therapist and legal guardians, an issue to which we now turn.

### B. *No Improper Delegation Regarding Visitation.*

#### 1. *Background*

At the conclusion of the contested postpermanency review hearing on October 30, 2009, the juvenile court stated that it would maintain the visitation order it had issued on September 4. The court also sought input from the parties on whether it should grant the legal guardians the discretion

---

[4] We also reject mother's argument that dependency jurisdiction was needed to ensure that therapeutic visits continued, because it was undisputed that the visits had started as scheduled and that the minors' Medi-Cal coverage would pay for the visits after dependency was dismissed.

[5] As the juvenile court observed, although the court would no longer hold ongoing review hearings after it dismissed dependency jurisdiction, the court retained jurisdiction over the minors as guardianship wards, and mother was free to petition the court for a change in order if a problem with visitation developed. (§§ 366.3, subd. (a), 388; *In re Kenneth S., Jr.* (2008) 169 Cal.App.4th 1353, 1358 [87 Cal.Rptr.3d 715]; *In re K.D., supra,* 124 Cal.App.4th at p. 1019.)

to decrease visits between the minors and mother. The legal guardians' counsel suggested that the children's therapist be the person to recommend if visitation should be reduced. Mother's counsel objected that because mother did not have direct contact with the minors' therapist, they risked getting into a " 'he said-she said' situation." To address this concern, the juvenile court specified that any therapist recommendation would have to be put in writing, and that any reduction in visitation "truly has to be for good reasons."

The juvenile court adopted the following visitation order in both of the minors' cases: "The Court maintains the existing visitation orders made on 9/4/2009 which is as follows: The parents to visit the minor the first Saturday of each month from 12 pm–4 pm commencing September 5, 2009. The legal guardians will select the place where the visits will occur. The place of the visits should be changed from time to time with no restrictions as to the place as long as it is within the local area. [¶] The legal guardians to text the mother who will share the information with the father no later than the 6:00 pm on the Thursday prior to the Saturday visit and the legal guardians to text the mother the place where the visits will be occurring. The parents may give their input as to where the visits to take place but the decision will be by the legal guardians. [¶] . . . [¶] Therapeutic visits on Wednesdays between 1:30 pm–3:30Pm between the minor and parents at a Better Way are ordered. [¶] The Court orders weekly Friday dinner visits from 5:00 pm to 7:00 pm between the minor and parents. The Court orders that the mother and legal guardians alternate the decision as to where the dinner will take place. The mother will select the first dinner which will take place on 9/11/09 and then the legal guardian will cho[o]se where dinner will take place on 9/18/09 and so forth. The parties to text each other no later than Wednesday 6pm. The parties to inform each other of the selected place with the following specific information: address, phone number and directions, if needed. [¶] If there is a change in visits, the parties to write out the change of visits on paper, date it and sign it and each party have a copy of the change of visits. [¶] The Court orders that the legal guardian[s] have discretion to expand the visits between the minor, mother or father or allow unsupervised visits between the minor, mother or father. [¶] If the minor's therapist makes the recommendation of decreasing the visits, the therapist to make a good faith effort to communicate with the mother & father and to get input from the legal guardian. The recommendation by the therapist to be in writing with a reason as to why that recommendation is being made and the mother to receive a copy of the letter and with that letter the Legal guardian has discretion to decrease the visits between the minor, mother or father. The letter to be addressed to legal guardian with carbon copy to mother."

### 2. *No improper delegation of authority over visitation*

Mother argues that the juvenile court unlawfully delegated the authority to reduce or terminate visits to the legal guardians and to the minors' therapist, an issue we review for abuse of discretion. (*In re M.R.* (2005) 132 Cal.App.4th 269, 272 [33 Cal.Rptr.3d 629].) Assuming arguendo that this issue was not forfeited by mother's failure to object below on the grounds specified on appeal as respondent argues, it lacks merit.

■ Where a juvenile court orders visitation, the court shall specify the frequency and duration of visits. (*In re M.R., supra*, 132 Cal.App.4th at p. 274.) The time, place, and manner of visitation may be left to the legal guardians, but the guardians shall not have discretion to decide whether visitation actually occurs. (*In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314 [104 Cal.Rptr.3d 706]; *In re M.R.*, at pp. 272, 274.) A juvenile court likewise may not improperly delegate decisions over whether visitation will occur to a minor's therapist (or any third person). (*In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1505 [48 Cal.Rptr.3d 823]; *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1138 [106 Cal.Rptr.2d 465].)

Here, the juvenile court's visitation order set forth, in great detail, the frequency and duration of visits between mother and her children, and this case is therefore distinguishable from ones where the court abused its discretion by delegating all authority over visitation to the legal guardians. (*In re Rebecca S., supra*, 181 Cal.App.4th at pp. 1313–1314; *In re M.R., supra*, 132 Cal.App.4th at pp. 272, 274.) Contrary to mother's argument, the order delegated no discretion whatsoever to the therapist over whether to reduce or terminate visits. (Cf. *In re Hunter S., supra*, 142 Cal.App.4th at p. 1505 [no visitation occurred in part because minor's therapist gave minor time to come to terms with negative feelings]; *In re Nicholas B., supra*, 88 Cal.App.4th at pp. 1138–1139 [improper to give therapist "veto power" over visitation]; *In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1477–1478 [68 Cal.Rptr.2d 714] [improper to condition visitation on gaining therapist's permission].) Instead, the order provided a procedure for the therapist to notify the legal guardians and mother if the therapist recommended that visits be reduced (a recommendation the therapist was of course free to make even absent a court order).

■ The visitation order did grant the legal guardians the discretion to reduce visitation, if the minors' therapist recommended such a reduction and the therapist provided proper notice of the recommendation. Because the juvenile court was dismissing jurisdiction and would therefore not have ongoing oversight over visitation, it wanted to issue a visitation order that was not "so fixed and so concrete that I take out of the hands of the legal guardians the ability to adjust [visitation] for good reason." In light of the

procedural posture of the case when the order was entered and all the relevant circumstances, including the fact that it was essentially undisputed that visits were going well and were expected to continue indefinitely despite the provision granting some discretion to the legal guardians, we conclude that the juvenile court's visitation order was not an abuse of discretion. The court properly considered the need for flexibility and allowed for adjustments if necessary after the termination of jurisdiction. If visits are reduced and mother contends that the legal guardians lack good reasons for the reduction, mother may petition the juvenile court for relief. (§§ 366.3, subd. (a), 388; *In re Kenneth S., Jr., supra*, 169 Cal.App.4th at p. 1358; *In re K.D., supra*, 124 Cal.App.4th at p. 1019.)

C. *No Duty to Provide ICWA Notice.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III.

#### DISPOSITION

The juvenile court's orders are affirmed.

Reardon, Acting P. J., and Rivera, J., concurred.

---

[*]See footnote, *ante*, page 1470.