Filed 4/25/16  In re M.R. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re M.R. et al., Persons Coming Under the Juvenile Court Law. | B265446 <br><br> (Los Angeles County <br> Super. Ct. No. CK54217) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> M.R., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marilyn Kading Martinez, Juvenile Court Referee.  Affirmed.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jeanette Cauble, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

On April 30, 2013 the juvenile court sustained a petition filed by the Los Angeles County Department of Children and Family Services (Department) on behalf of then-10-year-old M.R., eight-year-old A.P. and six-year-old Z.P. pursuant to Welfare and Institutions Code section 300, subdivision (b) (failure to protect),[1] and on behalf of three-year-old P.P. and two-year-old J.P. pursuant to section 300, subdivisions (b) and (j) (abuse of sibling), finding that the children's mother M.R. (Mother) and father David P. (Father) failed to properly supervise the children and had placed the three older ones (M.R., A.P. and Z.P.) in a detrimental and endangering situation by causing them to walk approximately two-tenths of a mile down Ventura Boulevard and to cross a busy intersection twice without adult supervision to sell chocolates in a supermarket parking lot. We affirmed the court's findings and order in a nonpublished opinion. (*In re M.R.* (Mar. 21, 2014, B249625).)

Following a contested 18-month review hearing (§ 366.22) the juvenile court on March 2, 2015 terminated Mother's reunification services and set a selection and implementation hearing (§ 366.26) for June 5, 2015. On May 29, 2015 Mother filed a request to change court order (§ 388) asking that the orders of suitable placement for the children and termination of family reunification services be modified by either placing the children with her or, in the alternative, reinstating reunification services with overnight visits. The court summarily denied the request. At the continued selection and implementation hearing on June 22, 2015 the court found it was in the children's best interest to appoint their paternal cousin Donna S., with whom they had been living for more than two years, as their legal guardian. The court appointed Donna legal guardian, ordered monitored visits for Mother and Father once a week for approximately two hours with Donna to determine the time, manner and location of visits, and terminated dependency jurisdiction.

---

[1] Statutory references are to the Welfare and Institutions Code.

Mother appeals from the court's summary denial of her section 388 petition, the section 366.26 order limiting her to monitored visitation and the decision to terminate dependency jurisdiction. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Events Leading to the Termination of Mother's Reunification Services*

The evidence supporting the juvenile court's exercise of jurisdiction and removal of the children from Mother and Father and information regarding the family's prior involvement with the dependency system including Mother and Father's history of substance abuse and their known criminal histories are set forth in detail in our prior opinion. At disposition the court ordered reunification services for both Mother and Father including a 52-week parenting program and on-demand drug testing if there was a reasonable suspicion either parent was under the influence. Participation in a full drug rehabilitation program was required only if they tested positive or failed to test.

By the time of the jurisdiction/disposition hearing two of the three oldest children were living with their cousin Donna, who had previously cared for them when asked by the family for assistance.[2] All five children were residing with Donna by the six-month review hearing in January 2014. Mother and Father remained incarcerated on charges of welfare fraud and other property-related crimes that had been pending prior to the children's detention. Based on Mother's enrollment in a substance abuse treatment program, the court found her in compliance with the case plan and ordered a continuation of family reunification services. Father was found not in compliance with the case plan; his reunification services were terminated.

---

[2] Donna is Father's first cousin and thus a "relative" within the meaning of the dependency statutes. (§ 319, subd. (f)(2) ["'relative' means an adult who is related to the child by blood, adoption, or affinity within the fifth degree of kinship"]; Cal. Rules of Court, rule 5.502(34)(A) & (A)(i) ["relative" means an adult "who is related to the child by blood, adoption, or affinity within the fifth degree of kinship"; the term includes a "first cousin once removed (parents' first cousin)"].)

3

For the 12-month review hearing in June 2014 the Department reported Mother had been released from prison in February 2014 (Father remained incarcerated) and had enrolled in a substance abuse program. Her participation in the program was terminated in April 2014 for noncompliance and a positive alcohol test. However, she subsequently tested negative for alcohol and drugs. Mother was living in transitional housing that did not include housing for her children. The Department enrolled her in parenting classes and anger management courses, and she was consistent in her attendance. Mother also received weekly mental health services and medication support. Although the court found Mother was not in compliance with her case plan, it ordered continued reunification services for her. The Department reported the children were doing well in Donna's home.

In connection with the contested 18-month review hearing, ultimately held on March 2, 2015 after several continuances, the Department reported Mother had finished parenting and anger management classes and continued to have negative results on drug and alcohol tests. Her transitional housing had terminated in October 2014, and she had not found a new residence despite referrals from the Department. Mother began two-hour unmonitored visitation with the children on Saturday mornings at a fast-food restaurant in late September 2014 and had unmonitored telephone contact. Mother's visits were subsequently moved, apparently at her request, to the Department's offices. Mother missed all her visits in January and February 2015, explaining there was "too much drama" with Donna. The Department, however, stated Donna dropped the children off and returned to pick them up and was not present for the visits. According to a last minute report submitted on the day of the section 366.22 hearing, "Mother refuses to take responsibility for her own actions and decisions not to visit in a safe place of mother's choice." She had only one telephone contact with the children during this period.

Father was released from prison in February 2015. The Department advised the court he was living with Mother in the home of paternal relatives. Father failed to attend

4

monitored visits arranged by the Department. The children continued to do well in Donna's home.

After hearing testimony from the social worker, Mother and Donna, the court terminated Mother's reunification services and set the selection and implementation hearing for June 5, 2015. Her visits with the children, to occur once a week at the Department's offices, remained unmonitored. Mother filed a notice of intent to file writ petition under California Rules of Court, rules 8.450-8.452. Her appointed trial counsel then filed a notice pursuant to *Glen C. v. Superior Court* (2000) 78 Cal.App.4th 570 advising the court she was unable to file a petition for extraordinary writ on the merits. We granted an extension of time for Mother to file her petition. When no petition was filed, the proceeding was deemed nonoperative.

2. *The Section 388 Request To Modify*

On May 29, 2015 Mother filed a section 388 petition asking the court to return the children to her or, alternatively, to reinstate reunification services with overnight visits. In support of her request to modify prior orders, Mother alleged she now had stable housing, had consistently tested negative for drugs and alcohol and visited the children regularly. Mother also stated, "My children would benefit from being raised in a loving home with their mother." The petition had no exhibits or attachments.

The court summarily denied the petition on June 2, 2015, ruling, "Reunification was just terminated 3 months ago. Mother has not provided any new evidence nor changed circumstances nor that request is in children's best interest." The order denying the petition was filed June 8, 2015.

3. *The Selection and Implementation Hearing*

In its report dated June 5, 2015 prepared for the section 366.26 hearing, the Department identified Donna as the children's prospective legal guardian and reported Donna's home had been assessed as appropriate and safe for the children. All five children indicated they were happy living with Donna, who confirmed her willingness to provide them with a permanent home through legal guardianship. Although the

Department considered it likely the children would be adopted if parental rights were terminated, the Department recommended the court select legal guardianship as the permanent plan pursuant to section 366.26, subdivision (c)(1)(A) (termination of parental rights would be detrimental to a child who is living with a relative who is unable or unwilling to adopt the child because of exceptional circumstances that do not include an unwillingness to accept legal or financial responsibility for the child but who is willing and capable of providing the child with a stable and permanent environment, and removal of the child from the custody of that relative would be detrimental to the emotional well-being of the child). The Department also recommended that dependency jurisdiction be terminated with financial assistance under the Kin-GAP program in place. The matter was continued to June 22, 2015.

At the continued hearing Donna testified that she would facilitate weekly visits with Mother. Responding to questions regarding her relationship with Mother and Father, she insisted she was willing to put aside her differences with them, as she had tried to do in the past. If she felt it was safe to do so, she would liberalize visitation. Mother's counsel reminded the court the children's visits with Mother had most recently been unmonitored at the Department's offices and asked that they remain unmonitored in a public setting. The Department objected to unmonitored visitation and referred the court to the information in a March 2, 2015 last minute report regarding Mother's missed visits. Counsel for the four younger children joined the Department's objection.

At the conclusion of the hearing the court appointed Donna the children's legal guardian and ordered Mother's visits with the children to be monitored once per week for two hours. The legal guardian was authorized to determine the time, manner and location of the visits. The court then terminated dependency jurisdiction over the children without objection from any party. Letters of guardianship were issued on the day of the hearing.

**DISCUSSION**

1.  *The Juvenile Court Did Not Abuse Its Discretion in Summarily Denying Mother's Section 388 Petition*

    a.  *Section 388 and the standard of review*

Section 388 provides for modification of juvenile court orders when the moving party presents new evidence or a change of circumstances and demonstrates modification of the previous order is in the child's best interests. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Y.M.* (2012) 207 Cal.App.4th 892, 919; see Cal. Rules of Court, rule 5.570(e).)[3] To obtain a hearing on a section 388 petition, the parent must make a prima facie showing as to both of these elements. (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1504; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188.) The petition should be liberally construed in favor of granting a hearing, but "[t]he prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; accord, *In re Brittany K.*, at p. 1505.) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case." (*In re Justice P.*, at p. 189.)

Even if a parent presents prima facie evidence supporting the allegations contained in the petition, however, "[a] petition [that] alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47; accord, *In re Mary G.* (2007) 151 Cal.App.4th

---

[3]     Section 388 provides a parent or other interested party "may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . . [¶] . . . [¶] . . . If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held . . . ."

184, 206.)  The parent must also "show that the undoing of the prior order" would be in the child's best interests.  (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529; accord, *In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.)

We review the summary denial of a section 388 petition for abuse of discretion. (*In re A.S.* (2009) 180 Cal.App.4th 351, 358; *In re Brittany K.*, *supra,* 127 Cal.App.4th at p. 1505.)  We may disturb the juvenile court's exercise of that discretion only in the rare case when the court has made an arbitrary, capricious or "patently absurd" determination. (*In re Stephanie M., supra,* 7 Cal.4th at p. 318.)

b. *Summary denial of Mother's petition was justified*

Mother's section 388 request to change court order, filed less than three months after the court had found that return of the children to Mother would likely result in their severe physical or emotional harm, identified three purported changes in circumstance: She now had stable housing; her drug tests were consistently negative; and she was visiting regularly with the children.  However, no evidence of any sort was presented to support her claim of newly stable housing.  Indeed, Mother did not even identify where or with whom she was living or for how long she had been there.  In fact, the only information in the record before the juvenile court indicated she was still living with Father, a situation that Mother conceded was not stable.

As for her drug-test results, again Mother did not provide any new evidence, relying on information that had previously been before the court at the contested 18-month review hearing.  At that time the court determined Mother was in compliance with the case plan but nonetheless concluded reunification services were properly terminated and the matter set for a selection and implementation hearing.  Reargument of previously determined issues is not the proper function of a section 388 petition.

Finally, Mother alleged she had been regularly visiting with the children but supplied no details; Donna, in contrast, reported that Mother's visits had been inconsistent after the 18-month review hearing on March 2, 2015 and recalled only three such visits during the intervening 12-week period.  Even crediting Mother's version, a

dozen one-hour weekly visits in the Department's offices at most constitute "changing circumstances" and are an insufficient basis to conclude reinstatement of reunification services, let alone return of the children to Mother's custody, would be in their best interest. The court's summary denial of a hearing on the section 388 petition was not an abuse of its broad discretion.

   2. *The Court's Monitored Visitation Order Was an Appropriate Exercise of Its Discretion*

Pursuant to section 366.26, subdivision (c)(4)(C), if the court appoints a legal guardian for children who are dependents of the court, "[t]he court shall also make an order for visitation with the parents . . . unless the court finds by a preponderance of the evidence that visitation would be detrimental to the physical or emotional well-being of the child." (See Cal. Rules of Court, rule 5.735(d)(2) [if the court finds legal guardianship is the appropriate permanent plan, "[t]he court may issue orders regarding visitation of the child by a parent or other relative"].) In crafting a visitation order the dependency court has the responsibility to balance the rights of the parent with the best interests of the child. (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1284; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) The court may delegate authority to the legal guardian to decide the time, place, and manner in which visitation will occur, but not the frequency or duration of the visits. (*In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314.) We review an order setting visitation for an abuse of discretion. (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356; *In re R.R.*, at p. 1284.)

The court's visitation order here complied with the limits on its ability to delegate authority to the legal guardian: It specified the frequency and duration of the visits (at least once per week for two hours) and left all other details to Donna. However, emphasizing that visitation for the nine months preceding the selection and implementation hearing had been unmonitored, Mother argues the court arbitrarily ordered her future visits were to be monitored (apparently subject to the discretion of the legal guardian to liberalize those visits) and contends there was no substantial evidence to support the change from unmonitored to monitored.

9

The order for monitored visitation was an appropriate exercise of the dependency court's discretion. As explained by the Department, which objected to Mother's request for unmonitored visitation at the June 22, 2015 hearing, as did counsel for the four younger children, the condition for Mother's earlier unsupervised visits was that they take place at the Department's offices. (A few visits also took place in the home of relatives when Donna was present.) The protection afforded by that safe location would no longer be available once the court terminated dependency jurisdiction. In addition, information before the court indicated Mother still lived with Father, she allowed him to have contact with the children, and he continued to interact inappropriately with them (he appeared to be under the influence of a drug and threatened the social worker during a monitored visit). Accordingly, the court was justifiably concerned that Mother would expose the children to Father if permitted unmonitored visitation. (See *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1825 [ample evidence supports juvenile court's implied findings, which, while not express, were "obvious" from the record].) Although, as Mother notes, the court could have protected the children by prohibiting Mother from allowing Father to have contact with them during her unmonitored visits, the decision to instead limit her to monitored visitation until liberalized by Donna was neither arbitrary nor irrational. (See *In re Brittany C., supra,* 191 Cal.App.4th at p. 1356 [reviewing court will not disturb an order setting visitation terms "unless the trial court made an arbitrary, capricious, or patently absurd determination"].)

    3. *Termination of Dependency Jurisdiction Was Proper*

Section 366.3, subdivision (a), provides, in part, "Following establishment of a legal guardianship, the court may continue jurisdiction over the child as a dependent child of the juvenile court or may terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the legal guardianship, as authorized by Section 366.4. If, however, a relative of the child is appointed the legal guardian of the child and the child has been placed with the relative for at least six months, the court shall, except if the relative guardian objects, or upon a finding of exceptional circumstances, terminate its

10

dependency jurisdiction and retain jurisdiction over the child as a ward of the guardianship, as authorized by Section 366.4." Pursuant to this provision, dismissal of the dependency proceeding is mandatory following appointment, as here, of a relative legal guardian, absent objection by the guardian or a finding of exceptional circumstances. (*In re Grace C.* (2010) 190 Cal.App.4th 1470, 1475.) The juvenile court retains jurisdiction over the children as guardianship wards, and a parent may petition the court for a change in order if a problem with visitation develops. (*Id.* at p. 1476, fn. 5; *In re Kenneth S., Jr.* (2008) 169 Cal.App.4th 1353, 1358.)[4] We review the order terminating dependency for abuse of discretion. (*In re Grace C.*, at p. 1475; *In re Twighla T.* (1992) 4 Cal.App.4th 799, 806.)

Mother contends the need for continuing judicial oversight to safeguard her right to meaningful visitation with the children constitutes extraordinary circumstances sufficient to overcome section 366.3, subdivision (a)'s otherwise mandatory directive to terminate dependency jurisdiction upon appointment of a relative guardian. She cites the poor relationship between Mother and Donna, "[l]eaving aside whether [Mother] or Donna is responsible," and the three younger children's past reluctance to visit with Mother, as demonstrating the importance of ongoing, periodic review hearings before the court.

---

[4] In his reply brief Mother's appellate counsel notes minute orders dated October 2, 2015, November 4, 2015 and November 25, 2015, submitted to this court with a motion for judicial notice by the Department, indicate several section 388 petitions filed by Mother after the termination of dependency jurisdiction were summarily denied. Although the minute orders do not reflect the substance of Mother's requests to change court orders, counsel suggests, given the history of the case, it is reasonable to infer they related to visitation. These minute orders certainly confirm that Mother continues to have access to the juvenile court to present any issues that may arise regarding her visitation. However, contrary to counsel's suggestion, they provide no support for her argument that the denial of her petitions somehow justifies a reversal of the juvenile court's decision to terminate its dependency jurisdiction.

The Department's motion for judicial notice of these three minute orders is granted.

As discussed, Mother did not object to the termination of dependency jurisdiction at the June 22, 2015 selection and implementation hearing at which Donna was appointed legal guardian. Even if Mother's silence did not forfeit the issue on appeal, as the Department contends (see, e.g., *In re K.D.* (2004) 124 Cal.App.4th 1013, 1018-1019 [finding waiver by appellant who did not challenge termination in juvenile court following appointment of a legal guardian; the court nonetheless exercised its discretion to consider the issue]),[5] Mother failed to present any evidence that Donna would not honor the court's visitation order. To the contrary, the social workers' reports in evidence indicated that Donna had cooperated with visitation and that Mother's past difficulties in seeing the children were not attributable to any interference by Donna. In addition, Donna testified at the hearing that she would facilitate the weekly visits ordered by the court and explained, if the younger children did not want to go, she would talk to them about how important it was to see their parents. Even Mother's counsel, when arguing for unmonitored visitation, acknowledged that prior conflicts between Mother and Donna had diminished. On this record the juvenile court was not obligated to find exceptional circumstances precluded termination of dependency. (*In re Grace C., supra*, 190 Cal.App.4th at p. 1476 ["[b]ecause the juvenile court's conclusion that the legal guardians supported continued visitation was supported by substantial evidence, we reject mother's argument that jurisdiction should have been maintained to oversee visitation"].)

---

[5] In *In re K.D., supra*, 124 Cal.App.4th 1013 the appellate court reversed the order terminating dependency jurisdiction because the juvenile court's appointment of an out-of-state guardian was "fatally inconsistent" with its finding it was in the child's best interest to maintain the parental bond. (*Id.* at pp. 1018-1019.) Mother's reliance on this case is misplaced. Not only was the threat to continued visitation far different but also the legal guardian was not a relative. Accordingly, the juvenile court was not required by section 366.3, subdivision (a), as it was here, to dismiss dependency absent a finding of exceptional circumstances.

## DISPOSITION

The orders of June 8, 2015 and June 22, 2015 are affirmed.


PERLUSS, P. J.

We concur:


ZELON, J.


SEGAL, J.

13