Filed 1/31/14  In re Ethan S. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Ethan S., a Person Coming Under the Juvenile Court Law. | |
| HUMBOLDT COUNTY DEPARTMENT OF HEALTH & HUMAN SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>Shawn S.,<br><br>　　　Defendant and Appellant. | A139349<br><br>(Humboldt County<br>Super. Ct. No. JV040182) |

Appellant Shawn S. appeals the juvenile court's orders relieving his counsel and terminating dependency jurisdiction as to his son Ethan S., following the selection of relative guardianship as the permanent plan.  He claims his son's status as an Indian child constitutes an extraordinary circumstance, such that the court abused its discretion in dismissing dependency jurisdiction.  We affirm.

1

"Shawn S. (Father) is the father of Ethan S. (now age 11). Ethan was the subject of a September 2004 dependency petition, based on an allegation of caretaker absence or incapacity. (Welf. & Inst. Code, § 300, subd. (g).)[2] At the time, Father was unable to provide for his son because he was participating in a residential drug treatment program. Ethan was found to be a dependent of the court in November 2004. Father was offered reunification services with a case plan that required him to complete his inpatient substance abuse program and follow all recommendations for aftercare. Father successfully completed his treatment program and the dependency was terminated in February 2006.

"On June 3, 2011, a second dependency petition was filed alleging that Father was frequently consuming alcohol in the home to the point of passing out. He had also physically abused Ethan when he was drunk.

"At the jurisdiction hearing held on July 28, 2011, the juvenile court sustained the petition as amended. The jurisdiction report filed by the Humboldt County Department of Health & Human Services (Department) concluded that Father 'has unaddressed alcohol issues that render him unable or unwilling to provide adequate care for his son.' A supplemental report stated that Father had been arrested on July 12, 2011, and charged with stealing a bottle of tequila from a supermarket. At the time of his arrest, he had another individual's prescription medication in his pocket.

"At the uncontested disposition hearing, held on August 23, 2011, Ethan was again declared a dependent of the juvenile court. The court found Father's unaddressed substance abuse issues rendered him unable to provide regular care or supervision for the child. Reunification services were ordered for Father.

---

[1] This portion of the opinion is derived, in part, from the earlier writ opinion filed in this case on June 24, 2013 (*Shawn S. v. Superior Court of Humboldt County* (June 24, 2013, A138265) [nonpub. opn.]). The court takes judicial notice of this opinion. (See Evid. Code, §§ 452, subd. (d), 459.) Passages from the earlier opinion are set forth in quotation marks.

[2] All statutory references are to the Welfare and Institutions Code.

"At the six-month status review hearing, the Department reported that Ethan was doing well in his placement in the home of his paternal grandfather. Father had completed a parenting class and was participating in the Alcohol and Other Drugs program (AOD). He had approximately three months left of a 52-week alcohol-abuse program called HART. He had served his jail time for the shoplifting charge and had completed his community service. He had moved into a clean and sober house. Visitation was reportedly going well. However, there were concerns that Father was misusing his prescription medications, possibly mixing them with alcohol or trading them for alcohol. The court found returning Ethan to Father was not appropriate at that time, as Father still needed to stabilize his addiction.

"The Department's report filed for the 12-month status review hearing notes that Father was kicked out of a clean and sober house in April 2012 after sustaining three positive tests for alcohol. He had moved into another clean and sober house and had not had any positive tests as of the date of the report, which was September 4, 2012. He had completed the HART program and was participating in weekly 12-step program meetings and activities. He was also participating in weekly therapy with Ethan and was trying to obtain housing. Ethan continued to do well in his grandfather's home and reportedly had expressed concerns about returning to his father's care. The Department recommended the court order six more months of reunification services.

"At the 12-month review hearing held on September 4, 2012, the juvenile court adopted the findings and orders recommended by the Department. Father's reunification services were continued.

"A contested 18-month review hearing was held on March 27, 2013. The Department's report prepared for this hearing notes Ethan had left a message with a social worker stating that he wished to live with Father. However, Father's voice could be heard in the background coaching Ethan on what to say. Subsequently, the boy reported that he wanted to stay with his grandfather. Ethan also stated that during the last six months there had been several incidents where Father was under the influence during their visits and Ethan had contacted his grandfather to pick him up early. In October

2012, Father had sold some items to a pawn shop and when he received the money asked Ethan if it would be ok for him to buy alcohol. That same month, they were at a movie and Father pulled a bottle of alcohol out in the theater and asked Ethan not to tell anyone. Father had been arrested for public intoxication on November 28, 2012. A police report regarding the incident states Father was so intoxicated that he could not walk, stand up, or communicate his name. The social worker reported that Father had left numerous phone messages rambling about things that did not make sense. He appeared to be under the influence as his speech was slurred. At the hearing, the social worker testified that Ethan's grandfather, who is also Father's employer, had reported on numerous occasions that Father appeared to be under the influence while he was at work. The last time he reported this was about a month prior to the hearing.

"The juvenile court agreed with Father's attorney that Father had done everything the Department had asked him to do over the past 18 months. However, the plan had not been successful. In particular, he had suffered two alcohol-related arrests, and his son had reported incidents in which he had been drinking alcohol in his presence. The court stressed that Ethan needed to be in a safe, alcohol-free home and that the grandfather was able to take care of the child's needs. The court concluded Father had completed his case plan, but his behaviors had not changed and he was still unable to provide a safe home for Ethan. The court scheduled a permanency planning hearing pursuant to section 366.26." (*Shawn S. v. Superior Court of Humboldt County, supra*, A138265.)

On May 2, 2013, Father filed a writ petition seeking an order directing the juvenile court to vacate its section 366.26 order and restore reunification services. He claimed the lower court erred in finding that returning Ethan to him would create a substantial risk of detriment to the child's well-being. He also asserted the court abused its discretion in denying him additional reunification services because the finding that he received reasonable reunification services was not supported by clear and convincing evidence. (*Shawn S. v. Superior Court of Humboldt County, supra*, A138265.)

On June 24, 2013, we filed our opinion denying Father's writ petition on the merits.

4

On June 14, 2013, the juvenile court received a report prepared for the section 366.26 hearing.  The Department's social worker wrote that the Yurok Tribe (Ethan is an enrolled member of this tribe through his mother's side of the family)  was supportive of a permanent plan of guardianship with the paternal grandfather.  The social worker reported the grandfather had arranged for Ethan to have frequent contact with both of his parents.  Ethan visited Father each weekend on Friday night, returning on Sunday.  The boy also had regular contact with his mother during the week.  The grandfather had a good relationship with both of Ethan's parents and was supportive of them maintaining positive relationships with Ethan.  The grandfather was committed to being Ethan's legal guardian  He maintained a home for Ethan and was financially stable.  Ethan wanted to live with his grandfather permanently, and wanted his grandfather to become his legal guardian.

The Department recommended the juvenile court select guardianship without dependency as the permanent plan.  The social worker proposed that the letters of guardianship would provide for the parents to have unsupervised day or overnight visitation on weekends, or as otherwise arranged with the grandfather.  The parents would not be allowed to visit Ethan if they were under the influence of alcohol or drugs.

On July 19, 2013, Father filed a petition seeking to change the juvenile court orders terminating reunification services and setting a section 366.26 hearing.  The court granted a hearing on the petition and, at the selection and implementation hearing conducted on July 24, 2013, the court simultaneously considered testimony in support of the section 388 petition.

Indian Child Welfare Act representative Angela Sundberg was present for the Yurok Tribe at the combined section 388 and section 366.26 hearing.  Sundberg joined with the Department's recommendations.  Specifically, she observed that the grandfather had shown he was able to facilitate Ethan's connection to his Indian culture and community, and had helped him maintain a relationship with both of his parents.  She indicated the Tribe was very happy with Ethan's current situation, and would like to see it continue.

5

After considering testimony from Father, as well as comments from counsel, the juvenile court ordered a permanent plan of guardianship without dependency and calendared a confidential guardianship status review hearing. It found that termination of parental rights would be detrimental to Ethan because Father had maintained regular visitation and contact with him and Ethan would benefit from continuing the relationship. The court further noted Ethan's status as an Indian child also supported the finding that termination of parental rights would not be in his best interest. The court made other related findings, and relieved Father's counsel. It also made the following visitation order: "Unsupervised visitation for parents, to include day and weekend visits, a minimum of five hours per week; time, place, and manner to be as directed by the guardian, so long as parents are clean and sober . . . . This appeal followed.

## DISCUSSION

Father claims the juvenile court abused its discretion when it dismissed dependency jurisdiction and relieved his counsel. Relying on *In re K.D.* (2004) 124 Cal.App.4th 1013 (*K.D.*), he asserts these orders must be reversed because the court's order terminating its dependency jurisdiction is " 'fatally inconsistent' " both with the finding that termination of parental rights would be detrimental to Ethan, as well as the order regarding continued visitation. We disagree.

The facts of this case differ significantly from the facts at issue in *K.D., supra*. There, the child's foster parent was appointed his guardian in a *non-relative* guardianship. (124 Cal.App.4th at pp. 1017–1018.) The Court of Appeal reversed an order terminating dependency jurisdiction following the establishment of a permanent plan of guardianship under section 366.26. (*K.D.*, at p. 1020.) The juvenile court had found that preserving the child's relationship with his parent was in the child's best interest, however, the parties' circumstances indicated regular parent-child visitation would be difficult, primarily because the guardian and child had moved from California to the Midwest. (*Id.* at pp. 1017, 1019.) The appellate court held the lower court was obligated to maintain dependency jurisdiction and hold regular review hearings to monitor whether regular visitation was occurring. (*Id*. at p. 1020.)

6

Here, Ethan's grandfather is his guardian and thus this is a relative guardianship. When considering whether to terminate dependency court jurisdiction, section 366.3, subdivision (a), distinguishes between relative and non-relative guardianships. It provides, in relevant part: "Following establishment of a legal guardianship, the court may continue jurisdiction over the child as a dependent child of the juvenile court or may terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the legal guardianship, as authorized by Section 366.4. *If, however, a relative of the child is appointed the legal guardian and the child has been placed with the relative for at least six months, the court shall, except if the relative guardian objects, or upon a finding of exceptional circumstances, terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the guardianship,* as authorized by Section 366.4. . . ." (Italics added.) Thus, in *non-relative* guardianships, the juvenile court has the discretion to continue or terminate jurisdiction. (§ 366.3, subd. (a).) In contrast, here, the court was *required* to terminate dependency jurisdiction unless either the guardian objected, or the court found there were exceptional circumstances that would merit continued court and agency supervision of the child. (§ 366.3, subd. (a); *In re Grace C.* (2010) 190 Cal.App.4th 1470, 1475–1476.) It is uncontested that Ethan's grandfather did not object to terminating dependency court jurisdiction. And while Father asserts there are exceptional circumstances meriting continued court supervision, no such showing can be inferred from the record

Father maintains "exceptional circumstances" exist here due to Ethan's status as an Indian child. However, representatives of the Yurok Tribe consistently expressed satisfaction with the grandfather's efforts to further Ethan's connection to his Indian heritage. Father also speculates that because Father works for the grandfather's business, he (the grandfather) "might well begin to limit [Father's] visitation time with Ethan without substantial cause for doing so." Substantial evidence does not support this contention. As a child of a parent with protracted substance abuse problems, Ethan's circumstances were, unfortunately, fairly typical. The record shows, however, that his grandfather had facilitated visitation in accordance with court orders throughout the

7

dependency proceedings.  The social worker reported the visitation plan appeared to be working.  Thus, the circumstances in this case are both legally and factually dissimilar to *K.D., supra*.  We conclude the juvenile court did not abuse its discretion in terminating dependency jurisdiction and relieving Father's counsel.

**DISPOSITION**

The orders are affirmed.

_____

Dondero, J.

We concur:

_____

Margulies, Acting P. J.

_____

Banke, J.