Filed 3/9/23  In re C.E. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re C.E., et al., Persons Coming Under the Juvenile Court Law. | H049883<br>(Santa Clara County Super. Ct. Nos. 20JD026677, 20JD026678, 20JD026679) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>J.P.,<br><br>     Defendant and Appellant;<br><br>D.E.,<br><br>     Respondent. | |

J.P. (mother) appeals from the juvenile court's exit orders pursuant to Welfare and Institutions Code section 362.4.[1]  Following contested proceedings, the juvenile court awarded D.E. (father) sole physical and legal custody of their three children and ordered

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

supervised visitation for mother with the potential for increased visitation. On appeal, mother maintains the juvenile court improperly delegated judicial authority to father over whether mother could have increased visitation. For the reasons set forth below, we conclude mother has not demonstrated an abuse of discretion by the juvenile court. We affirm the orders.

## I. FACTS AND PROCEDURAL BACKGROUND

The facts are undisputed. These dependency proceedings began in October 2020 and involve three of mother's children (C.E., L.E., and S.E.) (together, children), who are, respectively, six, five, and three years old.[2]

In December 2020, the juvenile court found it had jurisdiction over the children pursuant to section 300. The children were returned to mother's care under court family maintenance services. However, mother continued to engage in abusive and distressing behavior towards the children. As a result, the children were taken into protective custody, and the Santa Clara County Department of Family and Children's Services (department) filed a section 387 petition to remove the children from her custody.

On August 5, 2021, the juvenile court ordered the children be removed from mother's physical custody to avert harm to the children.[3] The children were released to father's care and continued to be in his care thereafter. The court adopted a case plan for mother that included completion of a certified 52-week child abuser's treatment program, individual therapy, anger management classes, and weekly random drug testing. The court ordered supervised visitation for mother.

---

[2] To protect their privacy, we refer to the children by their initials. (See Cal. Rules of Court, rule 8.401(a)(2).)

[3] This court affirmed the juvenile court's August 5, 2021 order removing children from mother's custody. (*In re Camryn E.* (Apr. 28, 2022, H049340 [nonpub. opn.] (prior opinion).) At father's request in this appeal, we have taken judicial notice of the record in case No. H049340. On our own motion, we take judicial notice of the prior opinion. (See Evid. Code, §§ 452, subd. (d), 459.)

The court scheduled a family maintenance review hearing pursuant to section 364 (review hearing) for January 21, 2022.[4]

In advance of the review hearing, the department submitted a status review report (January 21 report) and three addenda. The department recommended the dependency case be dismissed and that father be awarded full physical custody and shared legal custody with mother. The department noted in its January 21 report that mother had participated in visitation with the children and her case plan services and had made progress in self-regulation and how she spoke to the children.

Nevertheless, the department also expressed "a safety concern" because mother "often just lets [the children] run around and will give verbal commands with no action steps to follow through." During visits supervised at the department, mother tended to pay attention to only one of the children while the other "two children are running around or engaging in risky behaviors that puts their safety at risk." Mother had tested positive for THC (tetrahydrocannabinol) in a number of her weekly random drug testing, but she reported she was " 'clean' " as of September 29, 2021. One of the addenda submitted by the department (third addendum) noted that maternal grandmother had supervised some visits with children and there had been concerns, including an incident in which one of the children fell down at the park and was bleeding but neither mother nor grandmother informed the department or father.

At the January 21 review hearing, both mother and father requested a trial on a variety of issues. Mother's counsel stated that mother disagreed with the recommended custody orders. The juvenile court set the matter for trial in March.

The department submitted an addendum (fourth addendum) dated March 9 that stated mother was continuing to participate in certain programs and therapy, but she had recently tested positive for THC after reporting she was sober. The department continued

---

[4] Unless otherwise indicated, all dates occurred in 2022.

3

to have concerns about mother's visits with the children, detailing, for example, that one child had returned from the visits with a bruise on her stomach on one occasion and a mark on her stomach on another occasion. In a fifth addendum report, also dated March 9, the department attached a variety of documentation supporting the statements in the fourth addendum.

The department recommended the juvenile court dismiss the dependency for the children; that father be awarded full physical and legal custody; and that mother be granted supervised visits with the children.

A two-day contested review hearing occurred on March 9 and 10. Mother was present with her counsel and agreed with the department's recommendation to dismiss the dependency case but disagreed with the custody orders and the recommendation for supervised visits. Mother requested joint physical and legal custody of the children and that the children's primary residence be with her.

The court admitted into evidence all of the department's reports and court-appointed special advocate reports submitted for the children.

Mother presented testimony from a number of witnesses. A department social worker testified about mother's visitation and described the visits as generally positive. Mother and maternal grandmother also testified.

Father testified that currently mother's visits were being supervised by maternal grandmother and sometimes mother's neighbor. He believed the children benefitted from their visits with mother, although he noted some injuries that had occurred during the visits, including the youngest child falling off an unharnessed swing. Father stated the children were doing well and they were currently living with him (and his mother) in emergency housing. He believed it was "essential" for the children to see their mother, and stated he had never denied a visit. The court questioned father whether he wanted "some type of 50/50 arrangement" with mother and for children to spend more time with

4

her. Father responded, "I do want that to happen, but I kind of need to see that happening."

On March 10, the juvenile court rendered an oral ruling. The court stated it was "somewhat concerned about the recent reports of injuries to the children during visits with [mother]" and that the "collective lack of adult supervision and proper adult decision-making surrounding these multiple incidents continues to raise a red flag regarding the safety of the children in [] mother's care." The court also observed, however, that mother was continuing to make progress and that "given more time mother can become safer and provide the children with what they need, but we're not there at this moment."

The juvenile court adopted the department's recommendation of supervised visits for mother. It ordered supervised visits for a period of six months with a frequency of two times per week for four hours per visit for a total of eight hours per week.

Additionally, the juvenile court ordered a "stepped down" approach to visitation. Based on future visitation outcomes, the court allowed mother to gradually increase her time with the children and transition to unsupervised visits, with an overall goal of attaining a "50/50" parenting time share between mother and father. More specifically, the court explained that after six months of supervised visits and assuming there were "no incidents of significant concern" (which the court elaborated was "not just . . .wrong shoes, mismatched clothes, even a scrape or a bruise but something really significant") then mother would be entitled to three months of unsupervised visits and also visits would "increase to 16 hours per week." Assuming there were no incidents during the three months of unsupervised visits, visits with mother "will step down" to include unsupervised overnight visits. "And then assuming that doesn't lead to any issues, it's going to step down to a timeshare arrangement between the parents." The court noted the goal was to "increase the time that the children can spend with the mother so that it gets close to 50/50 within the next year or year plus, that's the goal."

5

Mother's counsel questioned the juvenile court about the "timeline" and whether "there are circumstances for instance that she would like to present for instance if she – when she completes the 52 week class and they have great comments that she wants the Court to see that the timeline could be moved up quicker, could she come back and present that for a changed timeline?" The court responded "Yes. Everything that I'm ordering today can be adjusted voluntarily between the parents. So, if mother can show father that things have gone better - - ideally you don't need to involve the court, whether it's this court or a family court, in any changes to visitation or custody. This is just a presumptive order in the absence of any agreement by the parties."

On March 10, the juvenile court issued a written order that adopted its custody orders (granting father sole legal and physical custody of the children), ordered visitation for mother, terminated the court's jurisdiction over the family, and dismissed the dependency.

Mother timely appealed.

## II. DISCUSSION

Mother's sole claim on appeal relates to the juvenile court's order on visitation, as pronounced at the March 10 hearing.[5] She maintains the court improperly delegated judicial authority to father "to determine whether mother was worthy of stepped down unsupervised and overnight visits" and allowed father to become "the judge of whether there had been any incidents of really significant concern." Father argues that mother forfeited her claim and, in any event, there was no error.

---

[5] Mother's notice of appeal states that she is appealing the juvenile court's denial of her request to return children to mother's physical custody and denial of joint legal custody. However, mother does not argue any error as to the custody decisions. We therefore conclude she has abandoned any challenge to the custody orders.

In a supplemental brief, mother asserts her counsel in the juvenile court was ineffective for failing to object to the visitation order.  Father disputes that her trial counsel was ineffective and asserts counsel's failure to object was tactical.

The department has filed a letter brief stating that it does not take a position in this appeal but observes that it "does not see any indication in the record that [the] juvenile court abused its discretion in its thoughtful fashioning of a plan to best meet the unique family circumstances."

A. *Forfeiture*

We first address forfeiture.  We exercise our discretion to consider mother's argument regarding visitation notwithstanding her failure to raise that issue in the juvenile court.  "Though a party's failure to challenge a claimed error in the trial court may forfeit the right to present that claim of error to the appellate court (see, e.g., *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338), the forfeiture doctrine is not absolute. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.)"  (*In re M.F.* (2022) 74 Cal.App.5th 86, 99, fn. 3; see *In re M.R.* (2005) 132 Cal.App.4th 269, 272 [exercising its discretion to address a visitation order despite failure to object to the order in the juvenile court].)  As mother's argument on appeal does not rest on any disputed facts, we will consider the merits of her claim.[6]

B. *Juvenile Court's Exit Orders Regarding Mother's Visitation*

   1.  <u>Governing Law and Standard of Review</u>

"When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make 'exit orders' regarding custody and visitation.  (§§ 364, subd. (c), 362.4; [citation].)  Such orders become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court."  (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122–1123 (*In re T.H.*).)

---

[6] Because we review the merits of mother's claim, we do not address her alternative contention of ineffective assistance of counsel.

"The power to determine the right and extent of visitation by a noncustodial parent in a dependency case resides with the court and may not be delegated to nonjudicial officials or private parties. [Citations.] This rule of nondelegation applies to exit orders issued when dependency jurisdiction is terminated. [Citations.] [¶] A visitation order may delegate to a third party the responsibility for managing the details of visits, including their time, place and manner. [Citation.] That said, 'the ultimate supervision and control over this discretion must remain with the court.' " (*In re T.H.*, *supra*, 190 Cal.App.4th at p. 1123.)

" 'We normally review the juvenile court's decision to terminate dependency jurisdiction and to issue a custody (or "exit") order pursuant to section 362.4 for abuse of discretion [citation] and may not disturb the order unless the court " ' "exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " ' " (*In re M.R.* (2017) 7 Cal.App.5th 886, 902 [reviewing juvenile court's custody and visitation orders for abuse of discretion].) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.)

2. Analysis

We do not agree with mother that the juvenile court abused its discretion in the challenged visitation orders. Mother does not dispute that the court ordered that she receive supervised visits with the children for eight hours each week. The court described the frequency and duration of visits with sufficient specificity. (See *In re Grace C.* (2010) 190 Cal.App.4th 1470, 1478.)

Because the challenged orders did not provide father unfettered discretion to decide to reduce or terminate visits, the cases cited by mother do not assist her. For example, in *In re T.H.*, *supra*, 190 Cal.App.4th 1119, the Court of Appeal reversed a

8

visitation order that provided supervised visitation would occur, "but only upon the 'agreement of the parents.' " (*Id*. at p. 1123.) The court concluded that order was "more than simply a delegation of the authority to set the 'time, place and manner' of the visitation – it effectively delegate[d] to [the] mother the power to determine whether visitation will occur at all." (*Ibid*.) The orders issued by the juvenile court here did not invest father with such authority.

It is true that the liberalization of visits is contingent on there not being further issues of significant concern. Nevertheless, the juvenile court has the authority to condition increased visitation on mother's ability to refrain from incidents of the type that had led to the dependency. (See *In re Chantal S.* (1996) 13 Cal.4th 196, 213 [order that specified visitation was to be facilitated by a therapist and that visitation was to begin when "father's chosen therapist determined father had made 'satisfactory progress for a time' " was not an improper delegation of judicial authority].) The orders here do not vest father with absolute discretion as to visitation, but rather allow for increased visitation in the absence of any further significant incident. It thus benefits mother by allowing restrictions on supervision to be potentially removed and hours of visitation to increase without seeking a court order. It did not allow father to effectively determine whether "visitation will occur at all." (*In re T.H.*, *supra*, 190 Cal.App.4th at p. 1123.)

We disagree with mother that the court "effectively punted the determination of its stepped down" orders. The record reflects that the juvenile court balanced its concerns with the children's safety in light of recent incidents with mother and also recognized that mother could continue to progress and that father was supportive of the goal of a 50/50 time share with mother. Moreover, mother remained free to seek court intervention to

9

modify visitation.[7]  We see no abuse of discretion in how the juvenile court fashioned its visitation orders in light of the facts and circumstances in this case.

### III.  DISPOSITION

The March 10, 2022 dispositional orders are affirmed.

---

[7] Mother also raises the hypothetical scenario whereby if father and children were to move to another county, it would be unclear whether the same judge would be able to preside over the case and therefore "mother's permanency in Santa Clara County was not a foregone conclusion."  She maintains the juvenile court made a "capricious determination" that "all future disputes between mother and father within the next year would be heard and decided by him."  Mother presents no authority for her argument that the juvenile court thereby erred.  We decline to address her unsupported argument, which is based on hypothetical facts not in the record.

_____
                              Danner, J.

WE CONCUR:




_____
Bamattre-Manoukian, Acting P.J.




_____
Wilson, J.




**H049883**
*In re C.E. et al.; DFCS v. J.P.*