Filed 10/6/23  In re M.B. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re M.B., a Person Coming Under the Juvenile Court Law. | B322471 |
| _____ | (Los Angeles County Super. Ct. No. 21CCJP01737) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| MAURICE B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Reversed with directions.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant Maurice B.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Maurice B., the father of 15-year-old Malaysia B., challenges the custody and visitation order the juvenile court issued under Welfare and Institutions Code section 362.4, subdivision (a),[1] when the court terminated its jurisdiction. Maurice contends the court abused its discretion in granting Malaysia's mother sole legal and physical custody of Malaysia. He also contends the court abused its discretion by ordering monitored visitation, failing to specify the duration of visits, and improperly delegating authority for visitation to a therapist. We agree with one of Maurice's contentions: The juvenile court erred in failing to specify the duration of visits. Therefore, we reverse the custody and visitation order for the juvenile court to correct this deficiency.

---

[1] Statutory references are to the Welfare and Institutions Code.

2

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The Department Files a Petition Under Section 300; the Juvenile Court Detains Malaysia*

We described much of the factual and procedural background of these proceedings in Maurice's prior appeal, which was from the juvenile court's jurisdiction findings and disposition orders. (See *In re M.B.* (July 13, 2023, B318130) [nonpub. opn.] (*Maurice B. I*).) In February 2021 Malaysia called law enforcement because she became scared after a fight between her mother, Michelle, and her stepfather, Brandon W. Michelle told sheriff's deputies that Brandon pushed her into her bedroom and grabbed her by the neck and that Malaysia's then-seven-year-old stepbrother, Zion, witnessed the incident. Brandon admitted to the social worker that he choked and "body-slammed" Michelle, but said that he later calmed down and walked away. He said the incident was a "misunderstanding." (*Maurice B. I.*)

Malaysia told the social worker that her mother and Brandon fought often, that Brandon was violent, and that she and Zion feared Brandon. Zion said that Brandon was mean to Michelle and yelled at her and that it scared him when Brandon banged on their door loudly at night. Zion said Brandon once threatened Michelle with one of his guns. (*Maurice B. I*, *supra*, B318130.)

In April 2021 the Department filed a petition under section 300, subdivisions (a) and (b), on behalf of Malaysia and Zion, alleging that Michelle and Brandon had "a history of engaging in violent altercations in the children's presence" and that their violent conduct "endangers the children's physical health and safety and places the children at risk of serious

3

physical harm, damage, and danger."[2]  (*Maurice B. I*, *supra*, B318130.)  The juvenile court detained Malaysia from Michelle and Maurice, placed her with a maternal aunt, and ordered monitored visitation for both parents.  The court also issued a temporary restraining order against Brandon and ordered him not to have any contact with Malaysia.  (*Maurice B. I*, *supra*.)

   B.    *The Juvenile Court Sustains an Amended Petition and Places Malaysia with Maurice*

In May 2021 the Department filed a first amended petition under section 300, subdivisions (a) and (b), adding allegations Michelle and Brandon physically abused Malaysia by hitting her with a belt.  The Department then filed a second amended petition adding allegations that Michelle and Maurice had a history of domestic violence and that Michelle obtained a temporary restraining order against Maurice in 2015. (*Maurice B. I*, *supra*, B318130.)

At the jurisdiction hearing the juvenile court found Malaysia was a person described by section 300, subdivisions (a) and (b).  The court sustained counts a-1 and b-1 (domestic violence between Michelle and Brandon) and a-3 and b-3 (physical abuse by Brandon).  The court also sustained counts a-2 and b-2 (physical abuse by Michelle), but struck the allegation Michelle hit Malaysia with a belt because the court found Michelle had stopped doing that.  The court dismissed counts a-4 and b-4 (domestic violence between Michelle and Maurice). (*Maurice B. I*, *supra*, B318130.)

---

[2]    The juvenile court's orders regarding Zion and his father, Brandon, are not at issue in this appeal.

4

At the disposition hearing counsel for Malaysia expressed concern about Maurice's unresolved "anger management issues" and said Maurice called the maternal aunt a "bitch" in front of Malaysia. Counsel stated Malaysia wanted to visit Maurice but did not want to live with him yet. The juvenile court declared Malaysia a dependent child of the court. The court removed Malaysia from Michelle and placed her with Maurice on the conditions that (1) Maurice "comply with parenting and anger management in therapy"; (2) Maurice not discuss the case or make negative remarks around Malaysia about her parents; and (3) the Department make a plan for Malaysia to transition to Maurice's home. Among other things, the court ordered Maurice to participate in individual counseling to address anger management, domestic violence, and parenting issues and to participate in conjoint counseling with Malaysia if her therapist recommended it. The court also ordered Michelle to participate in a support group for victims of domestic violence, parenting classes, and individual counseling, and to have monitored visitation with Malaysia. (*Maurice B. I*, *supra*, B318130.)

C.    *The Juvenile Court Sustains a Supplemental Petition, Removes Malaysia from Maurice, and Returns Her to Michelle*

Michelle complied with her case plan; Maurice did not. Among other things, Maurice never provided proof he had enrolled in counseling, and he made negative comments to Malaysia. The maternal aunt told the social worker that Maurice called Malaysia, read her case reports about Brandon's alleged abuse, and said to Malaysia, "You disgust me," which made Malaysia cry. When the social worker spoke with Maurice about

5

his comments to Malaysia, Maurice denied he made them and complained the Department was not treating him fairly as a man and a father. The social worker invited him to attend the Department's support group for fathers, and Maurice said he would speak with the social worker who led the group. (*Maurice B. I*, *supra*, B318130.)

Malaysia later told the social worker that Maurice complained about the maternal relatives during visits, and the social worker told Maurice that talking about the case or saying negative things about the maternal relatives made Malaysia cry or feel angry. Maurice denied saying those things and accused the maternal relatives of lying. A few weeks later Malaysia again told the social worker that she wanted Maurice to stop talking about Michelle and the maternal aunts. Malaysia said that her father needed "counseling" and "anger management," that she no longer wanted to have overnight visits with him, and that, when he talked about the case or spoke negatively about the maternal relatives, Malaysia thought about "hurting others." (*Maurice B. I*, *supra*, B318130.)

In October 2021 the Department reported to the juvenile court that Maurice's "negative berating comments" endangered Malaysia's physical and emotional well-being. At the Department's request, the juvenile court issued an order removing Malaysia from Maurice. When the social worker told Maurice about the court's order, he accused the social worker and the maternal relatives of lying and told the social worker she was a "dumb racist bitch" and was going to lose her job. (*Maurice B. I*, *supra*, B318130.)

On October 20, 2021 the Department filed a subsequent petition under section 342 alleging Maurice emotionally abused

Malaysia by making disparaging comments about her, Michelle, and Michelle's family. The Department also filed a supplemental petition under section 387 seeking to remove Malaysia from Maurice. The Department alleged Maurice did not participate in the court-ordered parenting and anger management classes and continued to discuss the case with Malaysia and make negative remarks about Michelle, all of which endangered Malaysia's physical health and safety and put her at risk of serious physical harm. When the social worker told Maurice about the allegations, he denied them and said it was Malaysia who initiated discussion about the case and the maternal relatives. Maurice said, "What was I supposed to do, tell her to shut up?" (*Maurice B. I*, *supra*, B318130.)

At the detention hearing on the subsequent and supplemental petitions, the court removed Malaysia from Maurice and ordered monitored visitation and phone calls. The court ordered the Department to assess whether Michelle could have unmonitored and overnight visits.

At the January 18, 2022 combined jurisdiction and disposition hearing the court sustained the supplemental petition under section 387 and dismissed without prejudice the subsequent petition under section 342 for emotional abuse. The court found Maurice's derogatory statements about Malaysia, Michelle, and Michelle's relatives violated the court's conditions for releasing Malaysia to Maurice. The court also found Maurice was not complying with his case plan because he was not "addressing parenting and anger management in his individual counseling." The court also stated "the persistent nature and extent of his negative comments shows he is not working on the issues at all." The court found Michelle, in contrast, had made

7

substantial progress in her case plan.  The court removed Malaysia from Maurice and placed her with Michelle on the condition Michelle comply with family preservation services. (*Maurice B. I*, *supra*, B318130.)

The court ordered Maurice to participate in parenting and anger management classes and individual counseling to address age-appropriate discipline for children and anger management and domestic violence issues.  The court ordered monitored visitation for Maurice.  Maurice appealed from the juvenile court's jurisdiction findings on the sustained supplemental petition under section 387 and the court's disposition orders.  We affirmed.  (*Maurice B. I*, *supra*, B318130.)

D.  *The Juvenile Court Terminates Jurisdiction, Grants Michelle Sole Custody, and Orders Monitored Visitation for Maurice*

In its status report for the review hearing under section 364, the Department reported Michelle had provided Malaysia a "safe, stable, and loving environment."  Michelle fully complied with her case plan by completing parenting and domestic violence classes and participating in individual counseling.  Michelle's therapist reported that Michelle had "grown tremendously," that she "continues to grow in her parental role and is a wonderful advocate for her children," and that she had "successfully completed her individual counseling."

Maurice refused to provide the Department with verification he was complying with his case plan, including documentation he had enrolled in counseling and parenting classes.  The Department wrote Maurice monthly, but Maurice did not contact the Department to schedule visits with Malaysia.

8

Maurice also did not make himself available for assessment by Malaysia's therapist for conjoint counseling.

In April 2022 Maurice called Malaysia, yelled at her, and called her a liar. Malaysia hung up. She told the Department she did not want to talk to Maurice again "because he does not know how to talk to people."

At the July 22, 2022 review hearing under section 364, the juvenile court awarded Michelle sole legal and physical custody of Malaysia. The court ordered monitored visitation in a therapeutic setting for Maurice. On July 26, 2022, after receiving and signing custody and visitation orders, the court terminated its jurisdiction over Malaysia. Maurice timely appealed from the court's custody and visitation order. (*Maurice B. I*, *supra*, B318130.)

**DISCUSSION**

A.    *Applicable Law and Standard of Review*

Section 362.4 "authorizes the juvenile court, when terminating jurisdiction over a dependent child, to issue a custody and visitation order that will become part of the parents' family law file." (*In re Anna T.* (2020) 55 Cal.App.5th 870, 871; see § 362.4, subd. (a); *In re Chantal S.* (1996) 13 Cal.4th 196, 203.) The court's custody and visitation order under section 362.4, commonly referred to as an "exit order" (*In re T.S.* (2020) 52 Cal.App.5th 503, 513), "may not be modified by the family court 'unless the court finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child.'" (*Anna T.*, at pp. 871-872; see § 302, subd. (d).) "When making a custody determination under

9

section 362.4, 'the court's focus and primary consideration must always be the best interests of the child.'" (*T.S.*, at p. 513; see *In re J.M.* (2023) 89 Cal.App.5th 95, 112 ["The court must be guided by the totality of the circumstances and issue orders that are in the child's best interests."].)

"'[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case.'" (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 112; see *In re N.M.* (2023) 88 Cal.App.5th 1090, 1094.) "We review the juvenile court's exit orders for an abuse of that discretion." (*J.M.*, at p. 113; see *In re C.W.* (2019) 33 Cal.App.5th 835, 863.) "'When applying the deferential abuse of discretion standard, "the trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious."'" (*In re Maya L.* (2014) 232 Cal.App.4th 81, 102.) "'When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'" (*N.M.*, at p. 1094.)

B.    *The Juvenile Court Did Not Abuse Its Discretion in Awarding Michelle Sole Legal and Physical Custody*

Maurice argues the juvenile court abused its discretion in awarding Michelle sole legal and physical custody of Malaysia because Michelle "had a long history of domestic violence relationships," and although she had "received services for domestic violence, only a short period of time had passed since her last domestic violence relationship." Maurice asserts he, "on the other hand, was able to properly care for the child."

It was well within the court's discretion to conclude granting custody to Michelle was in Malaysia's best interest.

10

Although the juvenile court initially found jurisdiction based on domestic violence between Brandon (Malaysia's stepfather) and Michelle, in the intervening 16 months Michelle fully complied with her case plan, which was designed to reduce the risk of future domestic violence. She completed a support group for victims of domestic violence, a parenting class, and individual therapy. Michelle's therapist reported that Michelle "has resolved her concerns that brought her to the attention of the Department" and that she "thinks more about her children than herself and no longer has interest in participating in unhealthy relationships." Michelle's therapist also stated that, although the therapist was leaving the agency where she worked, she did not think it was clinically necessary for Michelle to transfer to another therapist because she was "very confident" Michelle could "successfully advocate for herself and for her children going forward should any issue arise."

In July 2022, six months after the court returned Malaysia to Michelle, the Department found "no safety threats with the family" and recommended granting Michelle full physical custody. The Department reported Malaysia had "stability, structure, love, [and] guidance" in Michelle's care. Michelle told the social worker she had ended her relationship with Brandon and had "moved past having unhealthy relationships for the sake of dating." The social worker said that Michelle understood "the importance of not allowing her children to continue to be in or witness a cycle of violence" and that she was "able to keep them safe."

In contrast, there was considerable evidence that awarding custody to Maurice was not in Malaysia's best interest. Maurice consistently disparaged Michelle and her family and discussed

11

the dependency case with Malaysia, in violation of the juvenile court's order releasing Malaysia to Maurice. Maurice's disparaging comments made Malaysia think of hurting other people. Maurice's behavior did not improve after the juvenile court removed Malaysia from him in January 2022. In April 2022 Malaysia told the social worker that Maurice had called her and "immediately started yelling at her, calling her a liar and talking negatively about her maternal family." Malaysia told the social worker that she did not want to talk to Maurice, and at the section 364 hearing in July 2022, counsel for Malaysia told the juvenile court Malaysia did not want her father to visit.

Despite Maurice's assertion he "made efforts to attend therapy . . . to address his anger," he did not provide the Department or the juvenile court with any evidence he was complying with the court's orders aimed at protecting Malaysia. Maurice submitted no evidence he was attending parenting classes or addressing parenting or anger management issues in his online counseling. He did not make himself available to Malaysia's therapist to be assessed for conjoint counseling. In addition, he did not visit Malaysia in the six months before the section 364 hearing. The juvenile court did not abuse its discretion in awarding Michelle sole legal and physical custody.[3]

---

[3] The Department recommended giving Michelle and Maurice joint legal custody, but the juvenile court awarded sole legal custody to Michelle so that Michelle would not have to deal with Maurice's harassment, "especially since [Maurice] essentially refused to do services in this case to address the issues." That decision was also within the court's discretion.

C.    *The Juvenile Court Did Not Abuse Its Discretion in Ordering Monitored Visitation in a Therapeutic Setting, But It Did Err in Failing To Specify a Minimum Duration for Visits*

The juvenile court ordered that Maurice could visit Malaysia "at a minimum of one time per month" and that "either a therapist must be present or somebody that the therapist recommends." The court also ruled that, if the parents could not agree on the therapeutic monitor, Maurice would "have to pay for a professional monitor that meets the standard of what a therapist thinks is needed." Maurice argues the court abused its discretion in issuing that order. Maurice has half a point (or at least one-third of one).

Maurice argues the juvenile court erred in requiring his visits to be monitored because Malaysia "was not at any risk of harm from unmonitored visits." The court previously ordered, at the January 2022 disposition hearing, Maurice's visits with Malaysia to be monitored "given the extraordinary nature" of Maurice's negative statements to Malaysia. We affirmed that order. (See *In re M.B.*, *supra*, B318130.)

As discussed, Maurice did nothing after the January 2022 hearing to reduce the risk of harm to Malaysia. He did not comply with his case plan and did not visit Malaysia. When he called Malaysia, he yelled at her. At the July 2022 section 364 hearing, counsel for Malaysia told the court that Malaysia did not want her father to visit her and that, if the court ordered visits, she wanted "them to be monitored in a therapeutic setting." The court stated Malaysia was "old enough to know what situation she needs to feel safe with [Maurice], so those visits must be therapeutic, meaning either a therapist must be present or

13

somebody that the therapist recommends be present for the visits."  The court ordered monitored visitation for Maurice because of his previous inappropriate behavior around Malaysia "and because he hasn't completed the parenting class or the anger management."  That order was well within the court's discretion.  (See § 362.1, subd. (a)(1)(B) ["No visitation order shall jeopardize the safety of the child."]; *In re D.P.* (2020) 44 Cal.App.5th 1058, 1071 ["juvenile court reasonably exercised its discretion to limit mother to monitored visits"].)

Maurice also argues the court impermissibly delegated authority over visitation to the therapist.  He contends the court "placed sole discretion as to whether any visits would occur in the hands of the therapist" and "effectively granted the therapist absolute veto power over visits."  "[T]he power to decide whether *any* visitation occurs belongs to the court alone."  (*In re S.H.* (2003) 111 Cal.App.4th 310, 317; see *In re C.S.* (2022) 80 Cal.App.5th 631, 639 ["it is impermissible for the court to authorize a third person, whether social worker, therapist or the child, to determine whether any visitation will occur"].)  However, a "'visitation order may delegate to a third party the responsibility for managing the details of visits, including their time, place and manner.'"  (*In re Korbin Z.* (2016) 3 Cal.App.5th 511, 517; see *In re E.T.* (2013) 217 Cal.App.4th 426, 439.)

In *In re Chantal S.*, *supra*, 13 Cal.4th 196 the Supreme Court held the juvenile court did not err in giving a parent's therapist discretion to determine when the parent had made "satisfactory progress" so that visitation could begin.  (*Id.*, at pp. 213-214; see *In re C.S.*, *supra*, 80 Cal.App.5th at pp. 640-641 ["order granting . . . visitation rights and expressly stating the frequency and duration of visits, while requiring [child's]

14

therapist to approve the start of those visits, did not constitute an unlawful delegation of judicial authority"]; cf. *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1138 [order stating visitation "shall not occur until the minor's therapist expresses support for such visitation" gave too much discretion to the therapist].)  The juvenile court here delegated an appropriate level of responsibility to the therapist.  Contrary to Maurice's assertion, the court did not give the therapist sole discretion to decide whether visits would occur.  The visitation order stated:  "Father may have monitored therapeutic visits with a therapist or someone recommended by therapist present, at a minimum of 1 time per month.  If parents cannot agree upon a monitor, father to pay for a professional monitor that meets the standard of what therapist recommends."  The therapist's only role was to monitor the visits or approve someone else to serve as the monitor.  That was not an unlawful delegation of judicial authority.  (See *In re C.S.*, *supra*, 80 Cal.App.5th at p. 640 [juvenile court properly gave the therapist discretion to decide when visits could safely begin].)

Finally, Maurice argues the court erred in failing to specify the minimum duration of visits.  He's right about that.  The visitation order specified the minimum frequency of visits, but was silent on the duration of each visit.  The court's failure to set a minimum duration allowed for the possibility Michelle or the monitor could limit the length of visits to prevent any meaningful visitation.  If that were to occur, Maurice's only remedy would be to seek modification of the visitation order in family court, which would require him to show a "significant change of circumstances."  (§ 302, subd. (d).)  The juvenile court erred in failing to specify a minimum duration for the visits.  (See

15

*In re Grace C.* (2010) 190 Cal.App.4th 1470, 1478 ["Where a juvenile court orders visitation, the court shall specify the frequency and duration of visits."]; *In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314 ["leaving the frequency and duration of visits within the legal guardian's discretion allows the guardian to decide whether visitation actually will occur"]; *In re M.R.* (2005) 132 Cal.App.4th 269, 274 [juvenile court erred in failing to specify frequency and duration of visits].)

## DISPOSITION

The juvenile court's custody and visitation order is reversed. The juvenile court is directed to vacate its order terminating jurisdiction, issue a new custody and visitation order based on current circumstances that specifies the frequency and duration of the visits, and if appropriate, enter a new order terminating jurisdiction.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.

16