Filed 12/9/25  In re A.O. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.O. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.O., <br><br> Defendant and Appellant. | F089730 <br><br> (Super. Ct. Nos. JVDP-23-000107, JVDP-23-000108) <br><br><br> **OPINION** |

### THE COURT[*]

APPEAL from orders of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Gino de Solenni, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas Boze, County Counsel, Michael Kalanta, Deputy County Counsel, Gordon-Creed, Kelley, Holl, & Sugerman LLP, Jeremy Sugerman, and Anne H. Nguyen, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

Appellant, T.O. (father), is the father of two girls, 15-year-old A.O. and nine-year-old S.O. (collectively, the children), who are the subjects of a dependency case. Father challenges the juvenile court's April 30, 2025 written findings and orders pursuant to Welfare and Institutions Code[1] section 366.26 because the court did not include a visitation order following its selection of the permanent plan of legal guardianship for the children.[2] He further contends the court's error was prejudicial. The Stanislaus County Community Services Agency (agency) concedes the court's orders are incomplete because the court did not provide for visitation between father and the children, as required by section 366.26, subdivision (c)(4)(C) and California Rules of Court, rule 5.735(c)(2).[3] Accordingly, the parties agree, as do we, that the court's section 366.26 orders must be reversed as to visitation and remanded for the limited purpose of specifying the frequency and duration of visits between father and the children, pursuant to section 366.26, subdivision (c)(4)(C) and rule 5.735(c)(2), following the establishment of legal guardianship. We reverse the section 366.26 orders as to visitation and remand for the limited purpose of specifying the frequency and duration of visits between father and the children, pursuant to section 366.26, subdivision (c)(4)(C) and rule 5.735(c)(2). In all other respects, the section 366.26 orders are affirmed.

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise noted.

[2] Father does not contest the juvenile court's orders selecting legal guardianship as the permanent plan for the children, nor does he challenge the dismissal of the dependency jurisdiction following the establishment of the guardianship.

[3] All further rules references are to the California Rules of Court.

2.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 27, 2023, the children, then 13 and seven years old, who lived with father,[4] went to their neighbor's home and reported father was naked and masturbating in his living room. Father was arrested for lewd acts with a child under 14 years of age (Pen. Code, § 288, subd. (a)), annoying or molesting a child under the age of 18 (Pen. Code, § 647.6), and child endangerment (Pen. Code, § 273a, subd. (b)), and the children were placed in protective custody. The children reported to a social worker that they did not feel safe at home and father made them feel uncomfortable. A.O. described other similar incidents involving father, and father's ex-girlfriend stated one of father's family members told her that father did similar things with her when she was a child. The ex-girlfriend stated that while A.O. had a history of lying, father also had a history of abuse toward "females." Father denied the allegations, accusing the children of lying. The Stanislaus County District Attorney rejected the charges and did not file a criminal proceeding. The children were placed in protective custody on June 28, 2023.

Dependency proceedings were initiated on behalf of the children on June 30, 2023. An amended petition was filed alleging the children suffered or were at risk of suffering serious physical harm, sexual abuse by father, and abuse of the sibling due to the alleged conduct of father.

At the July 3, 2023 detention hearing, the juvenile court found a prima facie case that the children came within section 300, subdivisions (b), (d), and (j), ordered the

---

[4] A.P. (mother) lived out of state and her location at the time of the incident was unknown. Mother later appeared and participated in the instant proceedings but is not a party to father's appeal. The children were subject to a previous dependency proceeding in Alameda County in 2015 while living with mother due to mother's substance abuse, domestic violence, and sexual abuse of A.O. by mother's boyfriend (not father). During those proceedings, father was reunified with the children and they were placed with him. Mother was unable to reunify with the children and her services were terminated in 2016, after which she was not involved in the children's day-to-day care.

children continue to be detained in foster care in San Joaquin County, and granted father supervised visits pending the next hearing.

The July 26, 2023 jurisdiction and disposition report recommended the allegations of the petition be found true, the children be declared dependents and remain detained, and reunification services be ordered for father.[5] The report stated visits would not be detrimental to the children and recommended a minimum of one supervised visit per week, with discretion to the agency to increase the length, frequency, and location of visits.

The first in-person visit with father on July 13, 2023, was cancelled because father failed to arrive on time; father and the children then completed an in-person visit on July 20, 2023; and father visited the children at supervised visits on July 27, August 10, and September 14, 2023.

At a combined jurisdiction and disposition hearing on October 17, 2023, father was not present and the juvenile court denied father's counsel's request to continue the matter. The court found the children came within the provisions of section 300, subdivisions (b), (d), and (j). As to disposition, the court declared the children dependents of the court and found clear and convincing evidence of substantial danger to their physical health, safety, protection, or emotional wellbeing if they were returned to parental custody and ordered that they remain detained from their parents. The court ordered family reunification services for father, but mother was bypassed pursuant to section 361.5, subdivision (b)(10). Father's case plan required him to participate in counseling, a sexual abuse class, a parenting program, and family counseling with the children.

---

[5] The report recommended mother be bypassed for services pursuant to section 361.5, subdivision (b)(10) because her reunification services were previously terminated during the 2016 dependency proceedings in Alameda County.

*Six-Month Review Hearing*

The agency's March 29, 2024 report stated that during the time period covered by the report, the children refused to visit father six times, father cancelled three visits due to car trouble, three visits were cancelled because father failed to show up or call, and one visit was cancelled by both parties. Both children stated they did not want to visit father. An April 12, 2024 addendum to the report stated both children wanted to visit father, and they attended a supervised visit with him on April 1, 2024, but an April 9, 2024 visit was cancelled. Father stated he had started the services required by his case plan. The report recommended the children remain dependents of the juvenile court with continued reunification services to father, including weekly supervised visits.

At the April 24, 2024, six-month review hearing pursuant to section 366.21, subdivision (e), the parties submitted on the reports and the juvenile court found returning the children to father and mother would create a substantial risk of detriment to their physical or emotional wellbeing and ordered their continued removal from parental custody. The court found clear and convincing evidence that the agency provided reasonable services to father but that he had made minimal progress in the case plan. The court adopted the agency's recommended findings and orders to renew the children's dependency and extended father's reunification services and weekly supervised visits with the children. The court set a 12-month review hearing on August 16, 2024.

*Twelve-Month Review Hearing*

The August 16, 2024 report stated that nine visits during the time period covered by the report were cancelled because of father; two visits were cancelled because the children were out of town; and father attended one in-person visit with the children and completed one video call with the children. The agency recommended the children remain dependents and that father's reunification services and weekly supervised visits with the children be extended.

5.

At the August 16, 2024, 12-month review hearing, the juvenile court found that returning the children to father's custody would create a substantial risk of detriment to the physical and emotional wellbeing of the children. The court ordered the children to remain detained. The court found clear and convincing evidence that the agency had provided reasonable services to father and ordered his reunification services be extended for an additional six months, including weekly supervised visits with the children. The court granted the agency's request to exercise its discretion to permit father to have overnight visits with the children leading to a trial home visit with father with five-days' prior notice to the children's counsel.

*Eighteen-Month Review*

The December 17, 2024 report stated the agency recommended the juvenile court terminate services to father and set a permanency planning hearing pursuant to section 366.26 to select a permanent plan of legal guardianship with the children's caregivers. During the time period covered by the report, father and the children participated in one visit; father did not call in for six scheduled video call visits; father was disconnected during one video call and did not reconnect; the children's caretaker cancelled one visit due to a family emergency; and one visit neither father nor the children participated in. The report stated visitation between father and the children was detrimental to the children. The report stated the children both repeated on multiple occasions that they did not wish to reunify with father, felt uncomfortable with him, and would not feel safe living with him. It stated visitation would be suspended until the next hearing, but the case plan attached to the report recommended father and mother each have a minimum of one face-to-face contact each month with the children.

At the December 17, 2024, 18-month review hearing, the juvenile court found clear and convincing evidence that the agency had provided reasonable services to father but that he had made limited progress on his case plan. It found a substantial risk of detriment to the safety, protection, or physical and emotional wellbeing of the children if

6.

they were returned to father's care and terminated father's reunification services.  The court set a permanency planning hearing for April 17, 2025, and father was notified of his right to file a writ petition to challenge the order setting the permanency planning hearing.[6]

*Permanency Planning Hearing*

The April 17, 2025 report recommended a permanent plan of legal guardianship for the children with their current caregivers, with whom they had lived with since July 23, 2023, and that the dependency case be dismissed.  The report stated father's last visit with the children was on September 10, 2024, and that the last contact father had with the agency was on December 19, 2024.  It stated the children did not want to continue visits with father and recommended that any visits between the children and father after the permanency planning hearing be facilitated and supervised by a licensed visitation agency at father's expense.

At the April 30, 2025 permanency planning hearing, the April 17, 2025 report and the ICWA compliance report were entered into evidence.[7]  Father testified that he had not

---

[6]     The record does not indicate father filed a writ petition.

[7]     On April 4, 2025, an Indian Child Welfare Act (ICWA) compliance report was filed with the juvenile court, indicating mother stated she may have Native American ancestry in the previous dependency proceeding in which she was involved, but that the tribes that had been notified all responded that the children were ineligible for membership and the court in that proceeding determined ICWA did not apply.  Father filed an ICWA 0-20 form on July 5, 2023, stating he had no Native American ancestry.  Father also reported to social workers when interviewed during both the prior and instant dependency proceedings that he had no Native American ancestry.  The agency's compliance report for the instant dependency proceeding outlined efforts to contact 13 of father's relatives.  Father's relatives who were contacted reported no Native American ancestry in father's family.  Mother reported in the instant proceeding that she had Native American ancestry and provided the names of relatives to the agency.  The agency's compliance report also outlined efforts to contact mother's relatives and the Bureau of Indian Affairs and Indian tribes named by mother, but none of the inquiries or letters resulted in information showing the children were Indian children pursuant to ICWA.

visited the children regularly because of scheduling conflicts but he was not in agreement with the children being placed in legal guardianship. The social worker testified that the report accurately reflected father's visits with the children based on records from the visitation center and that father had been removed from the visitation schedule and had not contacted the visitation center since September 10, 2024 to schedule visits with the children. The social worker testified the children recently told him they did not want to visit father, but that their desire to visit him had been "back and forth throughout the life of the case."

Father's counsel requested the juvenile court provide father an additional six months of reunification services or, alternatively, place the children with him under a family maintenance plan. He requested that, if the court selected a permanent plan of legal guardianship for the children, that the court not adopt the visitation order recommended in the agency's report, as it did not include a minimum amount of visitation. Father's counsel objected to the proposal that any postpermanency visitation with the children would be supervised at father's expense.

The juvenile court found the children could not be returned to father within the statutory timeframe, that their current placement was appropriate and necessary, and that legal guardianship was the appropriate permanent plan for the children. It denied father's request for additional services. The court found the agency complied with its duty of inquiry and that the children were not Indian children pursuant to ICWA. Pursuant to section 366.26, subdivision (c)(4)(A), the court found that adoption or termination of parental rights was not in the best interest of the children and selected a permanent plan of guardianship for them, issued letters of guardianship, and terminated the dependency. The court further found the parents had maintained regular visitation and contact with the children and the children would benefit from continuing the relationship. As to visitation and continued relationships between the children and father and other biological family members, the court stated,

"These proposed guardians are also willing to keep up the biological connections, which is really very commendable. That is not always the case, but I am delighted that they are encouraging those continued relationships, as long as the [children] desire that connection and will continue to do that on a long-term basis.

"I would obviously grant them the [p]rudent [p]arenting [s]tandard, which they are legally entitled to as far as continued visitation with biological parents, grandparents, extended family members. It takes a village. The more people involved and connected to [the children] the better. [¶] … [¶]

"I am not going to order supervised visitation at … father's expense. These proposed guardians have been very accommodating, very reasonable, primarily concerned with the children. And I believe they will again act as prudent parents in terms of allowing visitation with the girls by any of the family members as they see fit."

The order signed by the juvenile court, utilizing Judicial Council form JV-320, did not contain a specific visitation order, as there was no selection of box 15.a ("Visitation between the child and [¶] parent [¶] … [¶] is scheduled as follows") or 15.b ("Visitation between the child and [parent] [¶] is detrimental to the child's physical or emotional well-being and is terminated") on the form. Consequently, the order did not grant father visitation with the children, but also did not expressly find visitation with father would be detrimental to the children.

On April 23, 2025, father timely filed a notice of appeal.

## DISCUSSION

Father contends the juvenile court erred by failing to enter proper visitation orders as required by section 366.26, subdivision (c)(4)(C). The agency agrees, as do we.

"When the child is removed from the home, the court first attempts, for a specified period of time, to reunify the family." (*In re Celine R.* (2003) 31 Cal.4th 45, 52.) When those efforts fail, " 'the court must terminate reunification efforts and set the matter for a hearing pursuant to section 366.26 for the selection and implementation of a permanent plan.' " (*Celine R.*, at p. 52.) " 'Once reunification services are ordered terminated, the

9.

focus shifts to the needs of the child for permanency and stability.' [Citation.] 'A section 366.26 hearing … is a hearing specifically designed to select and implement a permanent plan for the child.' [Citation.] It is designed to protect children's 'compelling rights … to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child.' [Citation.] 'The Legislature has declared that California has an interest in providing stable, permanent homes for children who have been removed from parental custody and for whom reunification efforts with their parents have been unsuccessful.' " (*Celine R.*, at pp. 52–53.)

Section 366.26, subdivision (c)(4)(C) provides that when a juvenile court orders legal guardianship for a child, "[t]he court shall … make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child." (§ 366.26, subd. (c)(4)(C); see *In re M.R.* (2005) 132 Cal.App.4th 269, 274 [the trial court is required to make a visitation order unless it finds that visitation was not in the children's best interest].)

Where a juvenile court orders visitation, it shall specify the frequency and duration of visits. (*In re Grace C.* (2010) 190 Cal.App.4th 1470, 1478.) The time, place, and manner of visitation may be left to the legal guardians, but they cannot have discretion to decide whether visitation actually happens. (*Ibid.*) The court cannot delegate the decision concerning whether visitation will occur to any third party, including the child, the social services agency, or the guardian. (*In re S.H.* (2003) 111 Cal.App.4th 310, 317–318; *In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374; *In re M.R.*, *supra*, 132 Cal.App.4th at p. 274 [trial court is required to make a visitation order unless it finds that visitation was not in the children's best interest]; *In re Korbin Z.* (2016) 3 Cal.App.5th 511, 516–517 [discretion delegated to child]; *In re Ethan J.* (2015) 236 Cal.App.4th 654, 661–662 [discretion delegated to child]; *In re Kyle E.* (2010) 185 Cal.App.4th 1130, 1136 [improper delegation to social services agency]; *In re T.H.* (2010) 190 Cal.App.4th 1119,

1123 [improper delegation to custodial parent]; *In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314 [improper delegation to legal guardian]; *In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1476–1477 [discretion delegated to therapist].) While the court may give the children's legal guardians discretion to determine the time, place, and manner of visitation, the court must, at a minimum, specify the frequency and duration of visits. (*M.R.*, at p. 274.)

We review an order setting visitation during a legal guardianship under the deferential abuse of discretion standard. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.) A juvenile court abuses its discretion if its decision is arbitrary, capricious, or patently absurd. (*In re L.W.* (2019) 32 Cal.App.5th 840, 851.) The court's orders are " 'presumed to be correct, and it is appellant's burden to affirmatively show error.' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 79; see *In re Sade C.* (1996) 13 Cal.4th 952, 994 ["An appealed-from judgment or order is presumed correct."])

Here, the juvenile court's April 30, 2025 written orders pursuant to section 366.26, utilizing Judicial Council form JV-320, omitted any selection of box 15.a ("Visitation between the child and [¶] parent [¶] … [¶] is scheduled as follows") or 15.b ("Visitation between the child and [parent] [¶] is detrimental to the child's physical or emotional well-being and is terminated"), consequently failing to address whether the court was ordering visitation for father, or whether it found such visitation would be detrimental to the children, as required by section 366.26, subdivision (c)(4)(C) and rule 5.735(c)(2). The court also failed to expressly state in its oral pronouncement whether visitation with father was ordered, but implied that it did not believe visits with father would be detrimental to the children, as it discussed how pleased it was that the caregivers were supportive of maintaining the children's relationships with their biological family. "To the extent that the court's oral pronouncement differed from its written order, the written order controls." (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 756, fn. 1.) Accordingly, the court's omission on Judicial Council form JV-320 regarding visitation controls.

11.

Further, the court's error was prejudicial to father, as there is a reasonable probability based on the record, including the court's statement at the section 366.26 hearing, that the court would have implemented a visitation order with a mandatory minimum schedule of visitation.

Accordingly, we agree with the parties that the juvenile court prejudicially erred by failing to specify the frequency and duration of visits between father and the children in its section 366.26 orders by omitting selection of box 15.a or 15.b. We reverse the section 366.26 orders as to visitation and remand to the court for the limited purpose of specifying the frequency and duration of visits between father and the children pursuant to section 366.26, subdivision (c)(4)(C) and rule 5.735(c)(2). (See *In re Randalynne G.* (2002) 97 Cal.App.4th 1156, 1164, 1167, 1170–1171 [order of guardianship affirmed but visitation order reversed and remanded where juvenile court delegated its discretion to determine whether any visitation would occur to the guardian], superseded by statute as stated in *In re S.B.* (2004) 32 Cal.4th 1287, 1294; see also *In re Rebecca S.*, *supra*, 81 Cal.App.4th at p. 1312 [visitation order reversed and remanded for juvenile court to specify the frequency and duration of visits].)

## **DISPOSITION**

The section 366.26 orders are reversed as to the determination of visitation for father and remanded for the limited purpose of the juvenile court specifying the frequency and duration of visits between father and the children, pursuant to section 366.26, subdivision (c)(4)(C) and rule 5.735(c)(2). In all other respects, the court's orders are affirmed.